J-S04023-16

2016 PA Super 48

| COMMONWEALTH OF PENNSYLVANIA, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | | |
| v. | | |
| DANTE ALAN BONNER, | | |
| Appellant | | No. 176 WDA 2015 |

Appeal from the Judgment of Sentence of September 4, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008568-2013; CP-02-CR-0008642-2013 AND CP-02-CR-0012173-2012.

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

OPINION BY OLSON, J.:                    **FILED FEBRUARY 23, 2016**

Appellant, Dante Alan Bonner, appeals from the judgment of sentence entered on September 4, 2014, as made final by the denial of his post-sentence motion on December 12, 2014.  In this appeal, we consider whether the Pennsylvania Sentencing Guidelines' inclusion of certain juvenile adjudications in calculating a defendant's prior record score violates the proportionality principles of the Eighth Amendment.  We hold that it is constitutionally permissible to consider juvenile adjudications when calculating a prior record score.  As we also find Appellant's discretionary aspects of sentencing claim without merit, we affirm.

The factual background of case CP-02-CR-0012173-2012 ("case 12173") is as follows. On October 5, 2012, Allegheny County Housing

*Retired Senior Judge assigned to the Superior Court.

Authority Police noticed a vehicle driving in reverse while failing to stop at a stop sign. Police observed Appellant, the front passenger in the vehicle, reach under his seat. A search of the vehicle found heroin, a firearm, and marijuana located under Appellant's seat.

The factual background of case CP-02-CR-0008568-2013 ("case 8568") is as follows. In the early morning hours of April 17, 2013, Pittsburgh Police conducted a traffic stop of a blue Dodge Avenger. Before the officers could exit their vehicle, Appellant, who was located in the rear seat of the Avenger, fled the vehicle. Officer Christopher Kertis pursued Appellant and, during that pursuit, Appellant fired three shots at Officer Kertis. At least one of those shots hit Officer Kertis. Officer Kertis received treatment at the hospital, but still suffers symptoms as a result of the shooting.

The factual background of case CP-02-CR-0008642-2013 ("case 8642") is as follows. On February 15, 2013, Sergeant Cristyn Zett was driving her personal vehicle when Appellant backed his vehicle into Sergeant Zett. She exited her vehicle and identified herself as a law enforcement officer. A struggle between Sergeant Zett and Appellant ensued and Appellant fled the scene. Appellant was later located and Sergeant Zett identified him as the individual who backed into her vehicle.

The procedural history of this case is as follows. On June 10, 2014, Appellant pled guilty to two counts of carrying a firearm without a license,[1] two counts of possession of a firearm by a prohibited person,[2] possession of a small amount of marijuana,[3] possession of a controlled substance,[4] possession with intent to deliver a controlled substance,[5] evidence tampering,[6] attempted homicide,[7] assault of a law enforcement officer,[8] recklessly endangering another person,[9] receiving stolen property,[10] aggravated assault,[11] resisting arrest,[12] fleeing the scene of an accident,[13] and four summary offenses. In exchange for his guilty pleas, the

_____

[1] 18 Pa.C.S.A. § 6106(a)(1).
[2] 18 Pa.C.S.A. §§ 6105(a)(1), 6105(c)(8).

[3] 35 P.S. § 780-113(a)(31).

[4] 35 P.S. § 780-113(a)(16).

[5] 35 P.S. § 780-113(a)(30).

[6] 18 Pa.C.S.A. § 4910(1).

[7] 18 Pa.C.S.A. §§ 901(a), 2501.

[8] 18 Pa.C.S.A. § 2702.1(a).

[9] 18 Pa.C.S.A. § 2705.

[10] 18 Pa.C.S.A. § 3925(a).

[11] 18 Pa.C.S.A. § 2702(a)(3).

[12] 18 Pa.C.S.A. § 5104.

[13] 75 Pa.C.S.A. § 3743(a).

Commonwealth requested that the sentences at cases 12173 and 8642 run concurrently with the sentence at case 8568. After the completion of a pre-sentence investigation report ("PSI"), on September 4, 2014, Appellant was sentenced to an aggregate term of 39 to 78 years' imprisonment.[14] When calculating the sentencing guidelines range for Appellant, the trial court used prior juvenile adjudications to arrive at a prior record score of five. Specifically, Appellant received a four-point enhancement of his prior record score for a juvenile aggravated assault adjudication together with a one-point enhancement for a juvenile adjudication involving the carrying of a firearm without a license.

On September 15, 2014, Appellant filed a post-sentence motion.[15] On December 12, 2014, the trial court denied Appellant's post-sentence motion.

_____

[14] The aggregate sentence included 10 to 20 years for attempted homicide, 20 to 40 years for assault of a law enforcement officer, 1 to 2 years for recklessly endangering another person, 3½ to 7 years for carrying a firearm without a license, 2½ to 5 years for receiving stolen property, and 2 to 4 years for possession of a firearm by a prohibited person. In accordance with Appellant's plea agreement, these sentences were imposed at case 8568, while punishments for the offenses charged at cases 12179 and 8642 were ordered to run concurrently to case 8568.

[15] The motion was timely as September 14, 2014 fell on a Sunday. **See** Pa.R.Crim.P. 203(A).

On January 14, 2015, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc*. This appeal followed.[16]

Appellant presents two issues for our review:

1. Whether the application of juvenile offenses for the purpose[] of calculating a defendant's prior record score is unconstitutional because it violates the proportionality principles of the Eighth Amendment[?]

2. Whether the trial court abused its discretion by imposing a manifestly excessive sentence when it sentenced the Appellant to an aggregate period of incarceration of not less than 39 and not more than 78 years where his entire prior criminal history was composed [] of juvenile offenses?

Appellant's Brief at 4.[17]

Appellant argues that the use of juvenile adjudications when calculating prior record scores violates the Eighth Amendment to the United States Constitution as incorporated by the Fourteenth Amendment.[18] We note that

_____

[16] On January 28, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). ***See*** Pa.R.A.P. 1925(b). On February 3, 2015, Appellant filed his concise statement. On April 23, 2015, the trial court issued its Rule 1925(a) opinion. Both issues raised on appeal were included in Appellant's concise statement.

[17] We have re-numbered the issues for ease of disposition.

[18] Appellant also argues that such use violates Article 1, § 13 of Pennsylvania's Constitution. "The Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendment of the United States Constitution." ***Commonwealth v. Yasipour***, 957 A.2d 734, 743 (Pa. Super. 2008), *appeal denied*, 980 A.2d
*(Footnote Continued Next Page)*

[a]lthough the [Pennsylvania Commission on Sentencing], rather than the General Assembly itself, directly adopts the [s]entencing [g]uidelines [] and thus they are not statutes *per se,* the [g]uidelines nevertheless retain a legislative character, as the General Assembly may reject them in their entirety prior to their taking effect, subject, of course, to gubernatorial review.

***Commonwealth. v. Hackenberger***, 836 A.2d 2, 4 n.9 (Pa. 2003) (citations omitted). Thus, we review the constitutionality of a sentencing guideline in the same manner that we review the constitutionality of a statute.

As the review of the constitutionality of a sentencing guideline raises a pure question of law, our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Hopkins***, 117 A.3d 247, 255 (Pa. 2015) (citation omitted). We presume that, in promulgating the sentencing guidelines, the Pennsylvania Commission on Sentencing and the General Assembly did not intend to violate the Constitution. ***See*** 1 Pa.C.S.A. § 1922(3). A sentencing guideline will not be declared unconstitutional "unless it clearly, palpably and plainly violates the Constitution[.]" ***Commonwealth v. Hitcho***, 123 A.3d 731, 756-757 (Pa. 2015) (citation omitted).

The Eighth Amendment provides that, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments

*(Footnote Continued)* ───────────────

111 (Pa. 2009) (citation omitted). Therefore, we do not conduct a separate analysis of Appellant's state constitutional claim.

- 6 -

inflicted." U.S. Const. Amend. VIII. "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense." *Graham v. Florida*, 560 U.S. 48, 59 (2010) (internal quotation marks, alteration, and citation omitted). Nonetheless, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (internal quotation marks and citation omitted).

The Supreme Court of the United States developed a strand of precedent which "has adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Miller v. Alabama*, 132 S.Ct. 2455, 2463 (2012). Based upon Appellant's brief, it is clear that he is seeking to invoke this line of precedent. He argues there should be a categorical rule against using prior juvenile adjudications when calculating a defendant's prior record score. *See* Appellant's Brief at 29. Appellant cites several factors in arguing against the use of juvenile adjudications in the calculation of prior record scores: (1) the failure of the sentencing guidelines to account for a youthful defendant's diminished culpability; (2) the failure of the sentencing guidelines to consider philosophical differences between the juvenile justice

system and the criminal justice system; and (3) the absence of trial by jury in the juvenile justice system.

When evaluating such a challenge we must first consider "objective indicia of society's standards, as expressed in pertinent legislative enactments and state practice[.]" ***Roper v. Simmons***, 543 U.S. 551, 563 (2005). "Next, guided by the standards elaborated by controlling precedents and by [our] own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose, [we] must determine in the exercise of [our] own independent judgment whether the punishment in question violates the Constitution." ***Graham***, 560 U.S. at 61 (internal quotation marks and citations omitted).

The sentencing guideline challenged by Appellant provides as follows:

(a) *Juvenile adjudication criteria*. Prior juvenile adjudications are counted in the [p]rior [r]ecord [s]core when the following criteria are met:

(1) The juvenile offense occurred on or after the offender's 14th birthday, and

(2) There was an express finding by the juvenile court that the adjudication was for a felony or one of the [first-degree m]isdemeanor [] offenses listed in § 303.7(a)(4).

(b) Only the most serious juvenile adjudication of each prior disposition is counted in the [p]rior [r]ecord [s]core. No other prior juvenile adjudication shall be counted in the [p]rior [r]ecord [s]core.

(c) *Lapsing of juvenile adjudications*. Prior juvenile adjudications for four point offenses listed in § 303.7(a)(1) shall always be included in the [p]rior [r]ecord [s]core, provided the criteria in subsection (a) above are met:

(1) All other juvenile adjudications not identified above in subsection (a) lapse and shall not be counted in the [p]rior [r]ecord [s]core if:

(i)  The offender was 28 years of age or older at the time the current offense was committed; and

(ii)  The offender remained crime-free during the ten-year period immediately preceding the offender's 28th birthday.

(iii)  *Crime-free*. Included in the definition of crime-free is any summary offense and/or one misdemeanor offense with a statutory maximum of one year or less.

(2) Nothing in this section shall prevent the court from considering lapsed prior adjudications at the time of sentencing.

204 Pa.Code § 303.6.  As noted above, pursuant to this section, Appellant had a prior record score of five – all resulting from juvenile adjudications. Appellant relies on **Roper, Graham**, and **Miller**[19] to argue that juvenile adjudications must be treated differently than adult convictions when calculating a prior record score.  Neither this Court nor our Supreme Court

_____

[19] After this case was submitted, the Supreme Court of the United States decided **Montgomery v. Louisiana**, 2016 WL 280758 (U.S. Jan. 25, 2016), which held that **Miller** announced a new substantive constitutional rule.  **Id.** at *11-16.  Although **Montgomery** arguably expands **Miller**, **see id.** at *24 (Scalia, J. dissenting), such expansion is not relevant to the disposition of the case *sub judice* as **Montgomery**, like **Miller**, addressed the situation where a defendant was sentenced to life imprisonment without the possibility of parole for a crime committed while he was a juvenile.

has considered whether section 303.6 violates the proportionality principles of the Eighth Amendment.[20]

As noted above, when considering Appellant's proportionality challenge we must first consider "objective indicia of society's standards, as expressed in pertinent legislative enactments and state practice[.]" **Roper**, 543 U.S. at 563. We agree with the United States Court of Appeals for the Tenth Circuit that "states have not reached a meaningful consensus regarding the manner in which juvenile adjudications may be considered in adult sentencing proceedings." **United States v. Orona**, 724 F.3d 1297, 1301-1302 (10th

_____

[20] We note that our Supreme Court recently decided **Commonwealth v. Hale**, 2015 WL 9284110 (Pa. Dec. 21, 2015) in which it considered whether a juvenile delinquency adjudication qualifies as a "conviction" for purposes of grading within a particularized sentencing regime. Specifically, our Supreme Court considered whether Hale could be sentenced under 18 Pa.C.S.A. § 6501(a.1)(1) which elevates the sentence for a defendant convicted of persons not to possess a firearm from a misdemeanor to a felony if the defendant were previously "convicted" of certain crimes. Our Supreme Court held that a juvenile adjudication for conduct amounting to an aggravated assault was not a "conviction" which would elevate Hale's persons not to possess a firearm conviction to a felony under section 6501(a.1)(1). In its opinion, our Supreme Court concluded that section 6501 expressly distinguishes between convictions and juvenile adjudications in determining the grading of the offense; hence, "[s]ection 6015 presents a context in which the legislative admonition that an adjudication 'is not a conviction' should be respected." **Hale**, 2015 WL 9284110 at *3. Although its focus was not on section 303.6 of the sentencing guidelines, the **Hale** Court noted "juvenile adjudications retain their relevance to discretionary sentencing determinations precisely because their consideration is expressly provided for in the Sentencing Guidelines." **Id.**, citing 204 Pa.Code § 303.6(a).

Cir. 2013).[21]  "Two states treat juvenile adjudications as convictions for purposes of broadly applicable habitual offender statutes."  *Id.* at 1302 (citations omitted).  In addition to Pennsylvania, at least 16 "other[ states] allow prior juvenile adjudications to enhance a sentence in at least some circumstances."  *Id.* (citations omitted).  "At least [23] additional states permit the sentencing court to consider prior juvenile adjudications in selecting a sentence within a statutory range."  *Id.* at 1304 (citations omitted).[22]  Combined, at least 42 states permit the use of juvenile adjudications during adult sentencing proceedings.  Thus, the objective indicia of society's standards indicate that section 303.6's use of prior juvenile adjudications when calculating a defendant's prior record score constitutes neither cruel nor unusual punishment.

Next, we turn to our own independent review of the Eighth Amendment's prohibition against cruel and unusual punishment so as to determine in the exercise of our independent judgment whether the sentencing guideline in question violates the Constitution.

Without triggering Eighth Amendment or due process concerns, federal courts of appeals have held that a prior juvenile adjudication can be used to

---

[21] We reviewed the Tenth Circuit's citations and find that, but for one citation change, that court's opinion continues to reflect accurately the state of the law today.

[22] We note that many of these jurisdictions have adopted variations of section 33(b) of the Uniform Juvenile Court Act of 1968.

raise a mandatory minimum and/or maximum sentence. *See United States v. Hunter*, 735 F.3d 172, 176 (4th Cir. 2013); *Orona*, 724 F.3d at 1309-1310; *United States v. Hoffman*, 710 F.3d 1228, 1233 (11th Cir. 2013) (*per curiam*); *United States v. Banks*, 679 F.3d 505, 507-508 (6th Cir. 2012); *United States v. Scott*, 610 F.3d 1009, 1018 (8th Cir. 2010); *United States v. Salahuddin*, 509 F.3d 858, 863–864 (7th Cir. 2007); *United States v. Mays*, 466 F.3d 335, 339–340 (5th Cir. 2006). Sister state courts have reached the same conclusion. *See Vickers v. Delaware*, 117 A.3d 516, 519-520 (Del. 2015); *South Carolina v. Smith*, 2015 WL 691506, *1 (S.C. Ct. App. Feb. 18, 2015) (*per curiam*); *Counts v. Wyoming*, 338 P.3d 902, 905-906 (Wyo. 2014).

These ten cases all dealt with the use of a prior conviction to increase a mandatory minimum and/or maximum penalty. Although this is different from questioning the constitutionality of a sentencing guidelines range applicable to a criminal defendant, we find the analogy helpful in our present inquiry. It is difficult to see how the use of a juvenile adjudication to raise the mandatory minimum and/or maximum penalty passes constitutional muster while enhancement of advisory sentencing guidelines violates the Eighth Amendment. *Cf. Peugh v. United States*, 133 S.Ct. 2072, 2087-2088 (2013) (constitutional protections for raising mandatory minimum and/or maximum penalty are greater than the constitutional protections for raising an advisory sentencing guidelines range).

Appellant has not cited, and we are unaware of, any cases in which a court has held that using juvenile adjudications when calculating an advisory sentencing guidelines range violates the Eighth Amendment. In addition to Pennsylvania's sentencing guidelines, the United States' sentencing guidelines and Maryland's sentencing guidelines use juvenile adjudications when calculating a defendant's prior record score.[23] U.S.S.G. § 4A1.2(d); Md. Code Regs. § 14.22.01.10(B)(2). We find persuasive the reasoning of the United States Court of Appeals for the Ninth Circuit in **United States v. Edwards**, 734 F.3d 850 (9th Cir. 2013), when dealing with an issue almost identical to the one we confront today.

In that case, the defendant challenged United States Sentencing Guideline § 4A1.2(d), which provides for inclusion of certain juvenile adjudications when calculating a defendant's criminal history score. The Ninth Circuit "reject[ed] Edwards['] contention and [held] that [**Roper**, **Graham**, and **Miller**] do not prevent [a] court from assigning criminal history points for juvenile [adjudications]." **Edwards**, 734 F.3d at 852. In so holding, the Ninth Circuit relied on the line of cases cited above which permits use of juvenile adjudications to raise the mandatory minimum and/or maximum penalty. **See id.**

_____

[23] Also, as noted above, at least three dozen other states use juvenile adjudications in some manner when pronouncing sentence in adult criminal proceedings.

*Roper, Graham*, and *Miller* all addressed the constitutionality of sentencing a defendant for offenses committed as a juvenile.[24]  In this case, Appellant was an adult when he committed the instant offenses.  Thus, *Roper, Graham*, and *Miller* are inapposite.  *See Commonwealth v. Lawson*, 90 A.3d 1, 6-8 (Pa. Super. 2014); *Commonwealth v. Cintora*, 69 A.3d 759, 764 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013).  Here, Appellant is being held to account for conduct and choices he made as an adult with full knowledge of the nature and scope of his own criminal past, including juvenile adjudications.  Thus, Appellant's contention that the sentencing guidelines fail to recognize the lack of maturity of a youthful offender holds little sway in the instant circumstances.  Moreover, the sentencing guidelines attempt to ensure that a defendant knows the prior juvenile adjudications that will be used during subsequent adult sentencing proceedings by limiting such use to those committed after he turned 14 and that (typically) occurred within the past 14 years.  204 Pa.Code §§ 303.6(a)(1), 303.6(c).  They also include only the most serious adjudication of each disposition, effectively giving the defendant a volume discount for criminal conduct committed as a juvenile.  204 Pa.Code § 303.6(b).

---

[24] Furthermore, *Roper, Graham*, *Miller*, all dealt with the death penalty or life imprisonment without the possibility of parole.  In this case, the death penalty and life imprisonment without the possibility of parole were not options for the trial court.  Thus, those cases are also distinguishable on that ground.

Appellant also argues that using prior juvenile adjudications during criminal justice proceedings fails to account for the difference between the juvenile justice system and the criminal justice system. As Appellant notes, the purposes behind the two systems are different. The juvenile justice system focuses on principles of balanced and restorative justice; *i.e.*, equal concern for the public interest and the rehabilitation of the juvenile. ***In the Interest of J.B.***, 909 A.2d 393, 402-403 (Pa. Super. 2006). On the other hand, the criminal justice system has a wider range of objectives. Appellant committed the instant offenses while an adult. Thus, the criminal justice system's purposes control. Among the purposes of the criminal justice system is to reduce the risk of recidivism by imposing harsher punishments upon those who have previously committed crimes, either as juveniles or adults, and failed to conform their conduct appropriately. That purpose is satisfied by including certain juvenile adjudications in the calculation of a defendant's prior record score. Thus, the Pennsylvania Commission on Sentencing has carefully considered juveniles' reduced culpability in promulgating section 303.6. In so doing, it determined that an adult should remember serious juvenile adjudications from the past 14 years and adjust his conduct accordingly. We fail to see how such a regulatory scheme runs afoul of Eighth Amendment concerns or principles of due process.

Appellant also argues that use of prior juvenile adjudications violates the Eighth Amendment because such use violates his right to a trial by jury

and due process. He contends that the right to a jury trial, as interpreted by ***Apprendi v. New Jersey***, 530 U.S. 466 (2000) and its progeny, prohibits using prior juvenile adjudications, which do not incorporate the right to a jury trial, when calculating a prior record score. This argument fails for two reasons.

Appellant concedes that the Supreme Court of the United States held that trial by jury is not required in juvenile proceedings. ***McKeiver v. Pennsylvania***, 403 U.S. 528, 541-551 (1971) (Blackmun, J. opinion announcing the judgment of the court);[25] ***see Commonwealth v. Hooks***, 921 A.2d 1199, 1207 (Pa. Super. 2007), *appeal denied*, 934 A.2d 1276 (Pa. 2007) (citation omitted) ("[D]ue process for a child in a juvenile delinquency proceeding does not require a jury trial, which would in fact delay justice in the juvenile proceeding and diminish the need to have it separate from the adult criminal system."). The Supreme Court of the United States has never held that lack of a jury trial in juvenile proceedings violates ***Apprendi*** when that adjudication is later used in adult criminal proceedings.

Appellant relies on ***United States v. Tighe***, 266 F.3d 1187 (9th Cir. 2001), to support his argument that ***Apprendi*** forbids the use of prior

---

[25] Appellant argues that ***McKeiver*** is not controlling because Justice Blackmun's opinion did not garner a majority of the justices. The holding in ***McKeiver***, however, that jury trials are not required in juvenile proceedings, did garner a majority of justices. Although the rationales offered by members of the Court differed, we focus on the holding and not the rationale behind that holding.

juvenile adjudications in calculating his prior record score. Appellant's reliance on *Tighe*, however, is misplaced. In *Tighe*, the defendant was convicted of possession of a firearm by a convicted felon. Typically, this carries with it a maximum penalty of 10 years. *See* 18 U.S.C. § 924(a)(2). However, if a defendant is convicted of possession of a firearm by a convicted felon after previously being convicted of three violent felonies and/or serious drug offenses, the conviction carries with it a mandatory minimum of 15 years. *See* 18 U.S.C. § 922(e)(1). In *Tighe*, one of the three predicate offenses used to raise the mandatory minimum and maximum penalty was a prior juvenile adjudication "for reckless endangerment, robbery[,] and unauthorized use of a motor vehicle." *Tighe*, 266 F.3d at 1191. In the case *sub judice*, Appellant's prior juvenile adjudications did not raise his mandatory minimum and/or maximum penalty. Therefore, the use of his prior juvenile adjudications does not raise an issue under *Apprendi* or *Alleyne v. United States*, 133 S. Ct. 2151 (2013). As noted above, the Ninth Circuit has held that a trial court may, consistent with the Constitution, use prior juvenile adjudications to raise a criminal history score. *Edwards*, 734 F.3d at 852. Thus, under the Ninth Circuit's own precedent, Appellant would not be entitled to relief pursuant to *Tighe*.

Secondly, in relying upon the Supreme Court of the United States' recitation of due process rights afforded to adults, the Ninth Circuit in *Tighe*

ignored the difference in due process due to juveniles and adults. As noted above, the Supreme Court of the United States held that juries are not necessary in juvenile adjudication hearings while juries are necessary in criminal trials. As the Sixth Circuit stated, Appellant "received all process that was due when convicted—for adults that includes the right to a jury trial; for juveniles, it does not." *Crowell*, 493 F.3d at 750 (citation omitted).

Moreover, as the United States Court of Appeals for the First Circuit stated, "the question of whether juvenile adjudications should be exempt from *Apprendi*'s general rule should turn on an examination of whether juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption." *United States v. Matthews*, 498 F.3d 25, 35 (1st Cir. 2007) (internal alterations and citation omitted). As juveniles have a right to due process of law, *see J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2408 (2011), and the Supreme Court of the United States has held that such due process does not require a jury trial, it naturally follows that non-jury juvenile adjudications are sufficiently reliable to comport with the requirements of due process.

Finally, *Tighe* represents the minority view of courts that have considered the issue. We agree with the majority view, espoused by the United States Courts of Appeals for the Third, Fourth, Sixth, Eighth, and Eleventh Circuits, along with the Supreme Courts of Kansas, Indiana, and

Washington, that a prior juvenile adjudication, even when the juvenile did not have the right to a jury trial, falls within the prior conviction exception of *Almendarez–Torres v. United States*, 523 U.S. 224 (1998)(prior conviction of a felony is merely a sentencing enhancement and not an element of the crime of illegal reentry into United States). *United States v. Wright*, 594 F.3d 259, 264-265 (4th Cir. 2010); *United States v. Crowell*, 493 F.3d 744, 750 (6th Cir. 2007); *United States v. Burge*, 407 F.3d 1183, 1190 (11th Cir. 2005); *United States v. Jones*, 332 F.3d 688, 696 (3d Cir. 2003); *United States v. Smalley*, 294 F.3d 1030, 1033 (8th Cir. 2002); *Washington v. Weber*, 149 P.3d 646, 652-653 (Wash. 2006); *Ryle v. Indiana*, 842 N.E.2d 320 (Ind. 2005); *Kansas v. Hitt*, 42 P.3d 732 (Kan. 2002).

For all of these reasons, our own independent evaluation indicates that use of a juvenile adjudication in calculating an adult defendant's prior record score does not violate the proportionality principles of the Eighth Amendment of the United States Constitution and Article 1, § 13 of the Pennsylvania Constitution. Instead, we hold that section 303.6 of the Pennsylvania Sentencing Guidelines fully complies with the Eighth Amendment as interpreted by *Roper*, *Graham*, and *Miller*. Accordingly, Appellant's first issue on appeal is without merit.

In his second issue, Appellant argues that his sentence is excessive. This issue challenges the discretionary aspects of Appellant's sentence. *See*

*Commonwealth v. Haynes*, 125 A.3d 800, 806 (Pa. Super. 2015).

Pursuant to statute, Appellant does not have an automatic right to appeal

the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b).

Instead, Appellant must petition this Court for permission to appeal the

discretionary aspects of his sentence. *Id.*

As this Court has explained, in order to reach the merits of a

discretionary aspects claim,

> [w]e conduct a four-part analysis to determine: (1) whether
> [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P.
> 902 and 903; (2) whether the issue was properly preserved at
> sentencing or in a motion to reconsider and modify sentence,
> *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a
> fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a
> substantial question that the sentence appealed from is not
> appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015) (citation

omitted). Appellant filed a timely notice of appeal, preserved the issue in his

post-sentence motion, and included a Rule 2119(f) statement in his

appellate brief. Thus, we turn to whether Appellant has raised a substantial

question.

"In order to establish a substantial question, the appellant must show

actions by the trial court inconsistent with the Sentencing Code or contrary

to the fundamental norms underlying the sentencing process."

*Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014)

(citation omitted). "The determination of whether a particular case raises a

substantial question is to be evaluated on a case-by-case basis."

***Commonwealth v. Seagraves***, 103 A.3d 839, 841 (Pa. Super. 2014), *appeal denied*, 116 A.3d 604 (Pa. 2015) (citation omitted).

In his Rule 2119(f) statement, Appellant argues that this appeal presents a substantial question for two reasons. First, he argues that the sentence was excessive because the trial court failed to consider his rehabilitative needs. Second, he argues that the sentence is excessive because of the consecutive nature of the sentences given in case 8568. This Court has recently held that a "challenge to the imposition of [] consecutive sentences as unduly excessive, together with [a] claim that the [trial] court failed to consider [the defendant's] rehabilitative needs upon fashioning its sentence, presents a substantial question." ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*), *appeal denied*, 2015 WL 7288526 (Pa. Nov. 16, 2015). As Appellant raises such a claim, we conclude that he has raised a substantial question and proceed to consider the merits of Appellant's discretionary aspects claim.

Pursuant to statute,

the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). Furthermore, when sentencing a defendant, the trial court is required to consider the sentencing guidelines. ***See Commonwealth v. Tobin***, 89 A.3d 663, 669 n.4 (Pa. Super. 2014) (citation omitted). In this case, Appellant was sentenced within the sentencing

guidelines. Accordingly, we may only vacate his sentence if this "case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2).

Appellant contends that the trial court failed to consider his rehabilitative needs. In support of this argument, he relies on **Commonwealth v. Simpson**, 510 A.2d 760 (Pa. Super. 1986), *appeal denied*, 522 A.2d 49 & 522 A.2d 1105 (Pa. 1987). **Simpson**, however, is easily distinguishable from the case at bar. In **Simpson**, the defendant had no prior record and had served honorably in the armed forces. **Id.** at 762. Contrast that with the case at bar, where Appellant began his string of criminal behavior at the age of 12. From then until the time he was arrested for the instant offenses, Appellant was routinely involved in the juvenile justice system. He continually violated the terms of his probation and other sentences. In short, Appellant rejected his chance at rehabilitation in the juvenile justice system. In his brief, Appellant quotes our holding in **Simpson** that, "As the trial court aptly pointed out, [it] is unable to predict the future, therefore, to the extent that we must make a judgment as to future behavior, we cannot ignore and must be guided by the past." Appellant's Brief at 19, *quoting* **Simpson**, 510 A.2d at 764.[26] In **Simpson**,

_____

[26] This language from **Simpson** echoes the eloquent quote of George Santayana, "Those who cannot remember the past are condemned to repeat
*(Footnote Continued Next Page)*

that past indicated that the defendant was amenable to rehabilitation.  On the other hand, Appellant's past demonstrates that he is not amenable to rehabilitation.

A close examination of the sentencing transcript reveals that the trial court discussed Appellant's rehabilitative needs at sentencing.  Although the trial court did not use the phrase "rehabilitative needs," the trial court discussed the fact that Appellant's conduct in June 2014 indicated that he was not amenable to rehabilitation.[27]  **See** N.T., 9/4/14, at 30-31.  The trial court found that if Appellant were truly remorseful, and thus amenable to rehabilitation, he would not have made the comments he did in June.  **See** **id.**  The trial court went on to find that Appellant was not amenable to mental health treatment that may assist him.  **Id.** at 33.  Furthermore, the trial court expressly indicated that it had considered the PSI.  **Id.** at 8. "Where [a PSI] exist[s], we [] presume that the [trial court] was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A [PSI] constitutes the record and speaks for itself."  **Commonwealth v. Antidormi**, 84 A.3d 736, 761 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

*(Footnote Continued)* ─────────────────────

it."  George Santayana, *Reason in Common Sense*, in THE LIFE OF REASON, p. 284 (1905).

[27] In June, at his guilty plea hearing, Appellant told Officer Kertis "f[---] you, I should have f[---]ing killed you."  N.T., 9/4/14, at 23-24.

- 23 -

Appellant cites to the injuries he suffered as a result of this incident, his mental illness, and his upbringing as reasons why he is amenable to rehabilitation. The trial court discussed all of these factors at sentencing. It noted that Appellant's injuries were his own fault as he was the one that opened fire on police. *See* N.T., 9/4/14, at 34. The trial court's review of the record indicated that Appellant was not interested in treatment for his mental illness.[28] *Id.* at 32-33. The trial court stated that many defendants with tough upbringings do not resort to the type of criminal behavior in which Appellant was involved. *Id.* at 33. Thus, contrary to Appellant's argument, the trial court carefully considered Appellant's rehabilitative needs when fashioning an appropriate sentence. It determined that Appellant had little chance of rehabilitation and, when weighed against the other statutory factors, a lengthy prison sentence within the guidelines range was appropriate.

Appellant also argues that the consecutive nature of his sentences makes his sentence excessive. He argues that the mandatory minimum sentence of 20 to 40 years' imprisonment would be sufficient to protect the public. The trial court determined, however, that Appellant should not receive a volume discount for his crimes. *See id.* at 31. This is consistent with the prior decisions of this Court. *Commonwealth v. Swope*, 123 A.3d

_____

[28] The trial court also serves as the mental health court for the Allegheny County Court of Common Pleas.

333, 341 (Pa. Super. 2015) (citation omitted) ("Appellant is not entitled to a volume discount for his crimes."); **Commonwealth v. Zirkle**, 107 A.3d 127, 134 (Pa. Super. 2014), *appeal denied*, 117 A.3d 297 (Pa. 2015).

This is not a case, like **Commonwealth v. Dodge**, 77 A.3d 1263 (Pa. Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014), or **Simpson**, in which Appellant was sentenced to an excessively long prison term for relatively minor crimes. Instead, in this case Appellant received an aggregate sentence of 39 to 78 years for serious offenses, including attempted murder of a police officer and recklessly endangering the life of a second police officer. It was a mere fortuity that multiple fatalities did not occur, resulting in homicide charges. The mere fact that the crimes arose out of the same incident does not mean that Appellant is entitled to receive concurrent sentences. **Commonwealth v. Ly**, 599 A.2d 613, 623 (Pa. 1991) (citations omitted).

The trial court carefully considered the section 9721(b) factors when sentencing Appellant, including his rehabilitative needs. The trial court reviewed the PSI and other information at its disposal when determining that a lengthy prison sentence was necessary considering the gravity of the offenses, the impact on the victims, and the need to protect the public in the future. It therefore sentenced Appellant to consecutive terms of imprisonment which resulted in an aggregate term of 39 to 78 years' imprisonment. This application of the guidelines was not "clearly

unreasonable." 42 Pa.C.S.A. § 9781(c)(2). Accordingly, we conclude that the trial court did not abuse its discretion in sentencing Appellant to 39 to 78 years' imprisonment.

In sum, we hold that section 303.6 of the Pennsylvania Sentencing Guidelines, which includes certain juvenile adjudications in the calculation of a defendant's prior record score, does not violate the proportionality principles of the Eighth Amendment. Although we reach the merits of Appellant's discretionary aspects claim, we ultimately conclude that his discretionary aspects challenge is without merit. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2016