J-S17021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
    :         PENNSYLVANIA
    :
    v.    :
    :
    :
WILLIAM EDWARD ZAGWOSKI  :
    :
    Appellant    :   No. 623 WDA 2022

Appeal from the Judgment of Sentence Entered April 22, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005558-2019

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:        **FILED: August 31, 2023**

Appellant, William Edward Zagwoski, appeals from the judgment of sentence entered on April 22, 2022.  We affirm.

On November 3, 2020, Appellant pleaded guilty to burglary and theft by unlawful taking.[1]  During the plea colloquy, Appellant stipulated to the facts contained in the affidavit of probable cause.  N.T. Guilty Plea, 11/3/20, at 11. The affidavit declared:

> On May 1, 2019, Doreen Booth filed a burglary report from her residence [in Pittsburgh].  She reported entry [into her residence] was made *via* an unlocked front door.  She indicated her purse was stolen and contained several jewelry items, US Currency and personal documents valued in excess of $20,000.00.

---

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(ii) and 3921(a), respectively.

On May 3, 2019, I [] interviewed Doreen Booth. Booth informed me her residence was burglarized on May 1, 2019 at approximately [5:00 p.m.]. She informed me [Appellant] is the suspect. Booth informed me her neighbor (Harley Sunderlin) has security video of the incident. Booth informed me a neighbor known as Bill [] has been assisting her with yard work. On May 1st she spoke to Bill earlier in the day. She had gone to the second floor to check on her roommate/boyfriend (Dennis Bronson). Upon returning to the first floor [living room,] she discovered her purse was missing from near the couch and approximately six feet inside the front door. She indicated her brown Leather Giani Vernini shoulder strap purse contained the following items: $400.00 of gold scrap metal, 6-Diamond & gold rings (Champagne diamond, Sapphire, etc. size 4-5) 1-sapphire & diamond ring & necklace set, 1-1oz gold nugget, 1-.25 gold eagle coin, 9-Credit Cards (PNC Bank, Macy's, etc.), wallet belonging to Michael Dimperio (father-age 98) that contained his personal documents, PNC checkbook belonging to Florence Dimperio (mother), First National Bank checkbook (Booth), calendar/date book, keys (house, filing cabinets, etc.) and five envelopes containing US Currency (1-$1,377.00, 1-$790.00, 1-$1,500.00, 1-$70.00 & 1-$25.00). Booth indicated the money envelopes were from recently cashed checks for Dimperio, Bronson and herself. Booth informed me she received the last name of Bill as Zagwoski from a neighbor. She described him as white male, age 48-49, 5'7" - 5'10" 140 lbs, thin build, gray hair with gray goatee.

. . .

[Appellant] resides [on the same street as Booth and lives] with his wife (Irene), five children and the [Bundy-Shields] family (Felicia & Hymie & their children).

. . .

On May 7, 2019, I spoke to Booth. She informed me she received a flash drive (provided to Pittsburgh Police) with the recording of her burglary from Harley Sunderlin. Booth indicated she viewed the video and photographs and recognized [Appellant] as he ran from her residence carrying her purse.

- 2 -

. . .

On May 7, 2019, [] Detective Carl Sanchioli and I arrived at [Booth's residence] to re-interview Booth and present [a] photo array. We spoke to Booth on her front porch at her request. Booth reiterated her previous comments about the burglary. . . . Sanchioli presented the [photo array] to Booth (eight folders with a single photograph in each). . . . Booth positively identified [Appellant] from the array. . . .

I viewed the security video recording. . . . [The recording depicts Appellant exiting his house and walking up the stairs of Booth's residence. Shortly afterwards, Appellant is shown carrying the stolen purse and running back to his house].

Affidavit of Probable Cause, 5/9/19, at 1-2 (some capitalization omitted); *see also* N.T. Guilty Plea, 11/3/20, at 11.

As the trial court explained:

At the time of [Appellant's] April 22, 2021 sentencing, [the trial court] was presented with testimony of Doreen Booth, the victim; Dominic Zaccone, [Appellant's] employer; Irene Zagowski, [Appellant's] wife; and [Appellant]. [Appellant's] guideline sentence called for [36] months in the mitigated range and [48 to 60] months in the standard range. After considering all of this evidence, along with the pre-sentence report, [the trial court] stated:

See, I'm a little concerned that [Appellant] knew the victim and still he does this crime after doing the work and Ms. Booth apparently paying him for what he had done. I mean, knowing her circumstances and she has a blind friend she cares for, her elderly parents. Then to take off someone in that situation is pretty callus. I mean, now granted, he entered a plea, but there was evidence that put him at the scene, photographs from the video from the neighbor's home. I mean, I take that into consideration. He entered the plea nevertheless my heart is not bleeding for [Appellant] as far as his problem. Granted, I'm concerned that he has a group of children that he cares for, that is all admirable, but nevertheless

we're here today because of a very cruel crime that he perpetrated on Ms. Booth.

[N.T. Sentencing, 4/22/21, at 29]. When asked about [Appellant's] ability to repay the restitution to the victim, [Appellant], his wife, Mr. Zaccone, and his counsel had an off-the-record discussion. Thereafter, Mr. Zaccone testified that he would pay [Appellant] $1,000 per month to work for him on a daily basis. Mr. Zaccone would then submit this amount directly to the court for payment toward restitution. Additionally, counsel for [Appellant] stated:

> I was informed by [Appellant] and his wife that they will be receiving their income [tax refund] check in the next two months where they will be able to pay $4,000 in a lump sum to the victim in this case, so, essentially, the proposed plan is $4,000 payment in approximately two months, $1,000 a month after that so the restitution will be paid in roughly 14 months. Well, maybe 15 months considering the calendar year.

[N.T. Sentencing, 4/22/21, at 39]. Based upon these representations, [the trial court] sentenced [Appellant to serve five years of probation, with 18 months of electronic home monitoring,] to allow [Appellant] to remain in the home with his five children and continue working to pay his restitution to the victim in this case. However, [Appellant] was advised by [the trial court] as follows:

> So that will be 18 months house arrest, five years probation, and [Appellant] is to make payments of $1,000 a month to Ms. Booth for the next 17 months. If that payment is not made, then I'm going to view that as a probation violation. I'm sure you've [heard] the saying bring your toothbrush with you if you're back here on a probation violation.
>
> I don't like to pre-judge or anything but please take to heart, I think you probably do take to heart, how I view this crime as being very serious and the impact. So, in essence, you're getting a break because you have some children and I want to see full restitution to Ms. Booth. Sending you to the state correctional institution will not get her any restitution, I don't think will ever get her a

- 4 -

> dime, but it might give her some satisfaction but I want to see her get that restitution. If she doesn't get the restitution, then you will go to a state prison, okay?

[N.T. Sentencing, 4/22/21, at 41-42].

Trial Court Opinion, 10/17/22, at 5-6.

In November 2021, Appellant's probation officer charged Appellant with violating the conditions of his probation. Specifically, it was alleged that Appellant violated his probation by: committing over 50 electronic violations during the time he was on electronic home monitoring; testing positive "for cocaine, opiates, and fentanyl on five occasions;" failing to pay the victim restitution in the initial, agreed-upon amount of $4,000.00; and, failing to pay the victim restitution in the agreed-upon amount of $1,000.00 per month. **See** Violation of Probation ("VOP") Hearing, 1/14/22, at 3.

The trial court held Appellant's VOP hearing on January 14, 2022. During the hearing, Appellant was represented by an attorney from the Allegheny County Public Defender's Office.

Appellant told the trial court that he was currently employed as an automobile mechanic for Midas. **Id.** at 11. He further told the court that, if he were able to continue working, he would be able to pay the victim in full because "[m]y wages will be attached, so I can't touch it." **Id.** at 12.

Further, the Commonwealth spoke with Appellant's attorney and informed the trial court:

> Your Honor, after speaking with . . . [Appellant's attorney], I think we have come to an agreement, if Your Honor's okay with it, to try this last-ditch effort to essentially try to get [the

victim] her money where he can be transferred to Renewal so that will allow him to leave for a job and be in a custodial setting, **but I made it clear that if he does not pay this restitution or this isn't working, we would be asking for a state sentence**, because at the last – you did say that if payment is not made, I'm going to view that as a probation violation, and I'm sure you've heard the saying "Bring your toothbrush with you" because you will go to state prison.

*Id.* at 8-9 (emphasis added).

Appellant's attorney then reiterated:

So I think if we keep [Appellant] not on electronic home monitoring, which seems like it's not successful, but in a carceral setting like [the Allegheny County Treatment Alternative ("ACTA")] or the Renewal Center, in custody, he leaves to go to work only, he comes back and the payments are made directly, if that doesn't work out in the next 90 days – it's like his last-ditch chance to show [the trial court] that he is actually going to make an effort moving forward if he's connected with treatment. I think, Your Honor, I don't have a great argument if we come back after the next 90 days or four months and no change is made. I think if he can show this court some good faith, then we can continue to keep him in ACTA moving forward, but sending him to state prison now would not allow the victim to receive any restitution, and looking out for that interest, I think that potentially allowing him one last chance to make restitution payments here, because he's had almost a year to do it, Your Honor, and hasn't made any progress, but one last chance allows [the victim] to start becoming whole and potentially resolving this case towards that. . . .

Your Honor, I would just impress upon the fact that I understand the victim wants [Appellant] to go to state prison, but trying to make her whole is, I think, what I was trying to focus on with probation and [the Commonwealth]. We were trying to reach that agreement. **I think that after 90 days, if there's no progress made on that, I don't have an argument to make to the court as to that, but at last, Judge, one final shot**.

*Id.* at 7-8 and 9-10 (emphasis added).

- 6 -

The trial court accepted the agreement between Appellant and the Commonwealth and provided Appellant a 90-day "trial period," where Appellant would be incarcerated in the Allegheny County Jail, "with permission to go to Renewal so that he can work in a custodial setting" and pay his restitution. *Id.* at 14-15. Further, in response to Appellant's claim of employment, the trial court instructed the Commonwealth to investigate whether Appellant was actually employed in the manner that Appellant averred during the hearing. *Id.* The trial court, however, impressed upon Appellant that the hearing would reconvene in 90 days and "if this doesn't work out or [your claim of work is] not true, then [Appellant] had his chance." *Id.* at 15.

The VOP hearing reconvened on April 22, 2022, where Appellant was represented by a new attorney from the Allegheny County Public Defender's Office (hereinafter "Appellant's Counsel" or "Counsel"). At the beginning of the hearing, the Commonwealth informed the trial court:

> The last time we were here, Your Honor, you stated that you would like me to contact his supervising officer here in Allegheny County, [Appellant] stated that he had a work history at Midas in Washington, PA. I did speak to his [supervisor], she stated that she spoke to Midas's District Manager, Dale, he informed her that [Appellant] had worked at Midas in Washington, but no longer does. He did not have the dates available, but he said he worked early summer of 2021 and that was for a couple of months at most and he just stopped showing up for work.
>
> Since his incarceration [in November] 2021, there have been some payments. He was originally court-ordered to pay

$16,782 to the victim, he has paid $194 since incarceration, Your Honor.

N.T. VOP Hearing, 4/22/22, at 3-4.

During the hearing, Appellant's Counsel informed the trial court that she had "just [been] assigned this [case] last week" and she requested a continuance so that she could "get our social workers involved to possibly draft some kind of aid in sentencing document because in [Appellant's] conversations there are significant mental health and, obviously, substance abuse problems." *Id.* at 6 and 10. As to why Appellant's Counsel failed to request a continuance earlier, Counsel declared:

> I [] would also like to point out that the report that I was provided was dated November 24, 2021, and the recommendation at that point in time was to get permission for [Appellant] to transfer to alternative housing to address the substance abuse and to begin making payments to his financial obligations. So, that was the last recommendation that I was provided until we were here today.

*Id.* at 7-8.

The trial court did not expressly rule on Counsel's request for a continuance; nevertheless, the trial court proceeded to sentencing. Prior to sentencing, Appellant's Counsel informed the trial court:

> [S]ince [Appellant's] been incarcerated he has[,] on his own volition[,] completed the Hope Program so he is starting to address his long history of substance abuse. He is also on, basically, he is on medication for his mental illness.

*Id.* at 13-14.

The trial court then sentenced Appellant to serve an aggregate term of three-and-one-half to seven years in prison, followed by four years of

probation, for his convictions. *Id.* at 15. Appellant's sentence fell within the mitigated range of the sentencing guidelines. *See* Appellant's Brief at 8-9.

Appellant filed a timely motion to modify his sentence and claimed that his sentence was excessive because the trial court failed to consider his mitigating circumstances. *See* Appellant's Motion to Modify, 5/2/22, at 1-6; *see also* Pa.R.Crim.P. 708(E). The trial court did not rule upon Appellant's motion and Appellant filed a timely notice of appeal. *See* Pa.R.Crim.P. 708(E) ("[a] motion to modify a sentence imposed after a revocation shall be filed within 10 days of the date of imposition. The filing of a motion to modify sentence will not toll the 30-day appeal period").

Appellant raises two claims on appeal:

1. Did the probation violation court abuse its discretion when it denied Appellant's request to postpone his April 2022 probation violation re-sentencing hearing in order to permit his attorney to prepare a mitigation plan for him, given that (A) a mitigation plan from the defense was essential if the court below was to be fully-informed as it decided upon sentence; (B) the attorney representing Appellant was newly-assigned to the case, and had not had the opportunity to develop a mitigation plan; (C) the delay sought was of modest length, with Appellant to remain detained during the delay; and (D) the interest of both the Commonwealth and of the judiciary would have been largely unharmed had the hearing been postponed?

2. Was Appellant's [three-and-one-half to seven] year confinement sentence, imposed at his probation violation hearing, a clearly unreasonable sentence, given that (A) his post-teenage criminal history was negligible (with his prior conviction history over 34 years following his 19th birthday consisting of a single misdemeanor forgery conviction), (B) his burglary conviction was a purse snatching that did not involve physical harm to any person or damage to the victim's

- 9 -

home, and (C) considerable mitigation existed in the case that the probation court indicated it would not consider?

Appellant's Brief at 4 (some capitalization omitted).

Appellant first claims that the trial court erred when it denied his request for a continuance.

> A decision to grant or deny a continuance rests within the sound discretion of the trial court. We will not reverse a trial court's decision absent a showing of abuse of that discretion or prejudice to the defendant. An abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Tucker*, 143 A.3d 955, 966 (Pa. Super. 2016) (quotation marks, citations, and corrections omitted). "A bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." *Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa. Super. 2012). Instead:

> an appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time. [An appellate court] will not reverse a denial of a motion for continuance in the absence of prejudice.

*Id.* (quotation marks, citations, and corrections omitted).

We further note that Pennsylvania Rule of Criminal Procedure 106 governs the granting of continuances. The rule provides:

> (A) The court . . . may, in the interests of justice, grant a continuance, on its own motion, or on the motion of either party.

- 10 -

. . .

> (C) When the matter is in the court of common pleas, the judge shall on the record identify the moving party and state of record the reasons for granting or denying the continuance. . . .
>
> (D) A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106.

On appeal, Appellant claims that the trial court abused its discretion when it failed to grant his request for a continuance, so that Appellant's Counsel could "consult with a team of social workers employed by [the Allegheny County Public Defender's Office] in order to develop a [mitigation plan] for the consideration of the [trial court] – a plan that would enable the [trial court] to punish Appellant for his misconduct while simultaneously working to treat him for ills and while facilitating the payment of restitution." Appellant's Brief at 40 (emphasis omitted). This claim fails.

At the outset, we conclude that Counsel's motion was untimely. Pennsylvania Rule of Criminal Procedure 106(D) states:

> A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106(D).

- 11 -

Here, Appellant's Counsel was assigned the case approximately one week prior to the Friday, April 22, 2022 hearing. *See* N.T. VOP Hearing, 4/22/22, at 10 (Counsel informed the trial court that she had "just [been] assigned this [case] last week"). Further, during the prior hearing on January 14, 2022, Counsel's predecessor from the Allegheny County Public Defender's Office expressly agreed that the VOP hearing would reconvene in 90 days and "if this doesn't work out or [Appellant's claim of work is] not true," then Appellant would most likely begin serving a state sentence. *See* N.T. VOP Hearing, 1/14/22, at 6-15. Since the January 14, 2022 hearing was transcribed, Counsel's claim of ignorance at the April 22, 2022 hearing regarding the possibility of a state sentence rings hollow and Counsel's request for a continuance was thus untimely. *See* Pa.R.Crim.P. 106(D).

We also note that Appellant did not submit a "mitigation plan" to either the trial court or this Court – and, thus, we have no ability to determine whether Appellant suffered prejudice in this case. Therefore, Appellant's claim fails for this second, independent reason. *Ross*, 57 A.3d at 91 ("[an appellate court] will not reverse a denial of a motion for continuance in the absence of prejudice").

Finally, to the extent the mitigation plan was based upon Appellant's history of mental illness and substance abuse, the trial court in this case was well-aware that Appellant suffered from both of these illnesses. *See*, *e.g.*, N.T. VOP Hearing, 4/22/22, at 13-14. Moreover, a mere 98 days prior to the April 22, 2022 VOP hearing, the trial court, Appellant, and the Commonwealth

arrived at a plan to "enable the [trial court] to punish Appellant for his misconduct while simultaneously working to treat him for ills and while facilitating the payment of restitution." *See* Appellant's Brief at 40 (emphasis omitted). To be sure, during the January 14, 2022 VOP hearing, the trial court ordered Appellant incarcerated in the Allegheny County Jail, "with permission to go to Renewal so that he can work in a custodial setting" and pay his restitution. Therefore, the trial court was well-aware of possible plans that might serve "as an alternative to state confinement" – and Appellant's claim of error regarding a generic and unspecified mitigation plan thus fails for this third reason.

On appeal, Appellant also claims that the trial court abused its discretion when it imposed a "manifestly excessive" sentence. Appellant's Brief at 46.

Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained:

> To reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

Here, Appellant has complied with the first three requirements. He filed a motion to modify his sentence, filed a timely notice of appeal, and included a concise statement of the reasons relied upon pursuant to Pa.R.A.P. 2119. Thus, Appellant preserved his current appellate claim. We will now determine whether Appellant's claim presents a "substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *Cook*, 941 A.2d at 11.

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McKiel*, 629 A.2d 1012, 1013 (Pa. Super. 1993); *Commonwealth v. Goggins*, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*). Additionally, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. *Goggins*, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* at 727 (emphasis omitted).

Appellant claims that the trial court abused its discretion at sentencing because the trial court failed to consider the following mitigating evidence: 1) Appellant's "post-teenage criminal history was negligible;" 2) Appellant's

burglary conviction was a "purse snatching that did not involve physical harm to any person or damage to the victim's home;" and 3) Appellant suffered from "childhood sexual victimization and homeless[ness,] PTSD diagnosis, drug addiction, and physical ailments."[2]  **See** Appellant's Brief at 46.

This Court has held that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." **Commonwealth v. Swope**, 123 A.3d 333, 339 (Pa. Super. 2015) (citations omitted), *citing* **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014); **see also Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (same).  Nevertheless, Appellant's claim fails because, during the sentencing hearing, the trial court was informed by a presentence investigation report ("PSI").

"Our Supreme Court has determined that where the trial court is informed by a [PSI], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Edwards**, 194 A.3d 625, 637 (Pa. Super. 2018) (citation omitted).  "The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been

---

[2] The trial court sentenced Appellant following the revocation of his probation for technical violations; hence, the sentencing guidelines were "the same as the initial sentencing guidelines."  204 Pa.Code §§ 303.1(b) and 307.3(a). Here, the trial court sentenced Appellant in the mitigated range of the sentencing guidelines.  **See** Appellant's Brief at 8-9.

informed by the [PSI]; thus properly considering and weighing all relevant factors." *Id.* (citation omitted). Further, as this Court has held: "[w]here a PSI exists, we presume that the trial court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A PSI constitutes the record and speaks for itself." *Commonwealth v. Bonner*, 135 A.3d 592, 605 (Pa. Super. 2016) (quotation marks, citations, and brackets omitted).

A PSI was part of the record in this case. *See* N.T. VOP Hearing, 1/22/22, at 12 (Appellant's counsel acknowledged that "there was a [PSI] done in this case"). Therefore, we presume the trial court weighed all of the appropriate sentencing factors, including the mitigating factors that Appellant now claims were ignored. *See Bonner*, 135 A.3d at 605. Appellant's claim on appeal thus fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2023