J-A26032-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDER SAVAGE | : | |
| | : | |
| Appellant | : | No. 1509 WDA 2017 |

Appeal from the Judgment of Sentence September 14, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0010399-2014,
CP-02-CR-0010402-2014

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    FILED DECEMBER 19, 2018

Alexander Savage (Appellant) appeals from the judgment of sentence imposed following our remand to the trial court for re-sentencing. Commonwealth v. A.S., 1366 WDA 2015 (Pa. Super. Jan. 9, 2017) (unpublished memorandum).  After careful review, we are constrained to vacate Appellant's judgment of sentence for a second time; we further find that the trial court abused its discretion in denying Appellant's motion to recuse.  Accordingly, we vacate Appellant's judgment of sentence and remand for re-sentencing before a different judge.

This Court previously explained:

> Appellant, who is the victims' biological brother, went to Indiana Regional Medical Center for treatment.  At that time he got a psychological evaluation and made statements to the psychiatrist stating that he had inappropriate sexual contact with his younger siblings.

> From there . . . the two children were forensically interviewed, where they made disclosures. [] Appellant also made statements to the detective in this case saying that he had touched his brother's bare penis with his hand between [December 2013] and [May 2014] at their residence.
>
> And he also stated that he had touched his sister's vagina, her breasts with his hands, he had her touch his front private parts with her hands more than one time, again, between December of 2013 and May of 2014. And then he did admit that there was penetration involved.

N.T. Guilty Plea Hearing, 2/17/15, at 7-8. At the time of the hearing, Appellant was 19 years old. Id. at 3. The victims in this case, his twin siblings, were born in July of 2004. Thus, the conduct giving rise to Appellant's charges appears to have occurred when he was 18 years old, and when his siblings were 8 years old.

On August 28, 2014, the Commonwealth charged Appellant with numerous sexual offenses at CP-02-CR-0010399-2014. Approximately two weeks later, additional charges were filed against Appellant at CP-02-0010402-2014. On February 17, 2015, Appellant entered a guilty plea at 10399 to indecent assault[;1] unlawful contact with a minor[;2] endangering the welfare of children[;3] and corruption of minors[.4] That same day, Appellant entered a guilty plea at 10402 to sexual assault[;5]

_____

1 18 Pa.C.S.A. § 3126(a)(7).

2 18 Pa.C.S.A. § 6318(a)(1).

3 18 Pa.C.S.A. § 4304(a)(1).

4 18 Pa.C.S.A. § 6301(a)(1)(ii).

5 18 Pa.C.S.A. § 3124.1.

incest[;[6]] two counts of indecent assault[;[7]] endangering the welfare of children;[[8]] corruption of minors;[[9]] and unlawful contact with a minor.[[10]]

Sentencing was deferred for the production of a pre-sentence investigation report . . . . On June 24, 2015, the trial court sentenced Appellant [above the aggravated range] to 2½-5 years' incarceration for indecent assault, and to no further penalty for the remaining counts at 10399. The court also sentenced Appellant [within the aggravated range] to a consecutive term of 5-10 years' incarceration for sexual assault, and to no further penalty for the remaining counts at 10402. Thus, Appellant received an aggregate sentence of 7½-15 years' incarceration, for his convictions at 10399 and 10402.

A.S., 1366 WDA 2015 at *2-3, 7.

In his prior appeal from the June 24, 2015 judgment of sentence, Appellant raised one issue: "Did the trial court violate 42 Pa.C.S.A. § 9721(b) by focusing on improper factors, including vague allegations of crimes for which Appellant was never charged, and by disregarding mitigating evidence, including Appellant's rehabilitative needs?" A.S., 1366 WDA 2015 at *4. Upon review, we found Appellant's claim that the trial court improperly disregarded mitigating evidence to lack merit, but determined Appellant was correct that the "sentencing court improperly considered the prior allegations of Appellant's sexual misconduct in crafting its sentence," and "the sentencing

_____

[6] 18 Pa.C.S.A. § 4302(b)(1).

[7] 18 Pa.C.S.A. § 3126(a)(7).

[8] 18 Pa.C.S.A. § 4304(a)(1).

[9] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[10] 18 Pa.C.S.A. § 6318(a)(1).

- 3 -

court's conclusion that the effect of [Appellant's] crimes on the victims in this case must be absolutely horrendous is lacking support in the specific and unique circumstances of this case." Id. at *16, 25, 27 (emphasis omitted). We therefore concluded that Appellant's "sentences for sexual assault and indecent assault were both clearly unreasonable," and as a result, vacated his judgment of sentence and remanded for re-sentencing. Id. at *35-36. Further, while acknowledging that this Court may not sua sponte order the recusal of a trial court, we reminded Appellant that he was permitted to file a motion for recusal upon remand. Id. at *35-36 n.12.

Upon remand, Appellant, on March 9, 2017, filed a motion for recusal. The trial court denied Appellant's motion on March 14, 2017. The trial court convened the new sentencing hearing on September 14, 2017. The trial court re-sentenced Appellant for his sexual assault conviction at docket number 10402, to five to ten years' incarceration, and for his indecent assault conviction at docket number 10399, to two-and-a-half to five years' incarceration. N.T., 9/14/17, at 21-22. The trial court again imposed Appellant's sentences consecutively, such that he received the same aggregate 7½ to 15 year sentence imposed by the trial court on June 24, 2015. Id. at 22.

Appellant filed a timely post-sentence motion, which the trial court denied on October 10, 2017. Appellant filed this timely appeal on October 18, 2017. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

- 4 -

Appellant presents two issues for our review:

I. DID THE TRIAL COURT VIOLATE 42 P[a].C.S.A. § 9721(b) BY FOCUSING ON IMPROPER FACTORS, INCLUDING UNSUBSTANTIATED HEARSAY ALLEGATIONS OF PRIOR MISCONDUCT, AND BY DISREGARDING MITIGATING EVIDENCE IN ISSUING A SENTENCE THAT WAS MANIFESTLY EXCESSIVE, NOT INDIVIDUALIZED AND BASED ON BIAS AND ILL WILL?

II. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING [APPELLANT'S] RECUSAL MOTION WHEN OVERWELMING EVIDENCE ESTABLISHED AN APPEARANCE OF BIAS?

Appellant's Brief at 7.

Appellant first challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." Commonwealth v. Buterbaugh, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." Id. We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

Commonwealth v. Baker, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process."

Commonwealth v. Dodge, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Instantly, Appellant has complied with the first three prongs of the discretionary aspect test by raising his issue in a timely post-sentence motion, filing a timely notice of appeal, and including in his appellate brief a Rule 2119(f) concise statement. Appellant's Brief at 24-27. Additionally, by asserting that the trial court's sentence violated provisions of the Sentencing Code, specifically for "focusing on improper factors" and "disregarding mitigating evidence," Appellant has raised a substantial question. Id. at 7. See Dodge, 77 A.3d at 1272 ("[A]n excessive sentence claim, in conjunction with an assertion that the court did not consider mitigating factors, raise[s] a substantial question."); Commonwealth v. Stewart, 867 A.2d 589, 592 (Pa. Super. 2005) ("Based on [a]ppellant's assertion that the sentencing court considered improper factors in placing the sentence in the aggravated range, we conclude that [a]ppellant presents a substantial question on appeal."); Commonwealth v. Simpson, 829 A.2d 334, 338 (Pa. Super. 2003) ("[A] claim that the sentence is excessive because the trial court relied on impermissible factors raises a substantial question.") (citation omitted).

Because Appellant has satisfied each of the criteria for invoking our review of a discretionary aspects of sentencing claim, we turn to the merits of his argument. Preliminarily, we recognize:

> Sentencing is a matter vested in the sound discretion of the
> sentencing judge. The standard employed when reviewing the

discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

Commonwealth v. Cook, 941 A.2d 7, 11-12 (Pa. Super. 2007) (citations omitted).

In re-sentencing Appellant on September 14, 2017, the trial court imposed the identical sentence as to the one imposed on June 24, 2015. We thus adopt our prior findings that "Appellant's sentence for sexual assault . . . was in the aggravated sentence range, but still within the guidelines," and his "sentence for indecent assault fell outside the guidelines." A.S., 1366 WDA 2015 at *7-8.[11] Further, we review whether Appellant's indecent assault sentence is unreasonable, and whether his sexual assault sentence is clearly

_____

[11] The trial court again noted on the record that Appellant had a prior record score of zero, that the offense gravity score assigned to sexual assault is 11, and the offense gravity score assigned to indecent assault is six. Therefore, the standard range sexual assault sentence was 36 months to 54 months, with 60 months as the aggravated sentence; the standard range indecent assault sentence was 3 to 12 months, with the aggravated range sentence being 18 months. N.T., 9/14/17, at 15. Appellant's guidelines for both convictions remain the same as calculated by this Court in its prior unpublished memorandum. See A.S., 1366 WDA 2015 at *6-7.

unreasonable,[12] while again considering the "nature and circumstances of the offense[s], the sentencing court's observations of [Appellant], the findings that formed the basis of the sentence, and the sentencing guidelines." Commonwealth v. Bowen, 975 A.2d 1120, 1123-24 (Pa. Super. 2009).

Appellant first argues that the trial court "improperly considered unreliable and vague hearsay allegations regarding misconduct towards a cousin." Appellant's Brief at 32. The Commonwealth agrees. Commonwealth's Brief at 29 ("Appellant is correct in his argument that the trial court once again considered an impermissible factor in crafting its sentence on remand.").

At Appellant's original sentencing, the trial court stated it was "especially concerned about allegations in 2004 where you were alleged to have had

_____

[12] The relevant portion of the Sentencing Code provides:

> (c) Determination on appeal. —The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable. . . .

42 Pa.C.S.A. § 9781(c) (emphasis added).

sexual contact with both your brother and sister, as well as a young six-year old or four-year old cousin." N.T., 6/24/15, at 5-6. As a result, in his first appeal, "Appellant claim[ed] the trial court relied on the ostensibly unsubstantiated claim that Appellant had prior sexual contact with the victims, as well as sexual contact with another minor[.]" A.S., 1366 WDA 2015 at *11.

We first note that the pre-sentence investigation report (PSI) prepared for Appellant's June 24, 2015 sentencing indicated "that Appellant had no prior adjudications of delinquency," nor did it "make[] [any] mention of any prior allegations of sexual misconduct, nor does it note any prior allegations of criminal misconduct, much less any convictions or adjudications of juvenile delinquency." Id. In analyzing the trial court's basis for its statements about Appellant's alleged sexual contact with his minor cousin, we explained:

> [T]he Commonwealth briefly stated during Appellant's sentencing hearing . . . "[t]here was an also an allegation regarding Appellant and a young cousin." N.T., Sentencing Hearing, 6/24/15, at 4. No evidence was offered to support the Commonwealth's assertion. The Commonwealth did not even cite a source for the allegations. The only information we find in the record tending to support the prior allegations of sexual misconduct comes from the psychological assessment/report of Appellant provided by Dr. Allen Pass. In that report, Dr. Pass stated: "A review of available records indicates that Appellant has one prior juvenile conviction occurring in 2009 at the age of 13 involving indecent contact (genital fondling) with his male cousin ... who was age 8." Final Treatment Status Summary Report, 5/16/15, at 2. Dr. Pass did not provide a citation to, or otherwise identify, the "official records" from which he drew this conclusion. Indeed, this Court finds it strange that Dr. Pass was privy to an "official report" that apparently was not available to the [adult probation office] or the prosecutor in this case, as both the [adult probation office] and

the prosecutor told the trial court that Appellant had no prior adult or juvenile convictions. Moreover, the date provided by Dr. Pass does not correspond to the date of prior allegations cited by both the trial court and the Commonwealth, and the age of the alleged victim listed by Dr. Pass does not correspond with the age of the victim referenced by the court at sentencing (a "six-year old or four-year old cousin"). See N.T. Sentencing Hearing, 6/24/15, at 5.

A.S., 1366 WDA 2015 at *12.

We concluded that "this issue falls squarely within the category of prior allegations of criminal conduct which did not result in an arrest or formal charges," and therefore the "prior allegations may only be considered for sentencing purposes under certain limited circumstances." Id. at *16 (citation omitted). We further examined the record in comparison with similar cases where such information was considered by the trial court in fashioning a sentence, and concluded that in Appellant's case, "the sentencing court improperly considered the prior allegations of Appellant's sexual misconduct in crafting its sentence."[13] Id. at 13-16.

_____

[13] We explained:

> The prior allegations are, on their face, multi-layered hearsay statements. Dr. Pass, who was clearly incorrect when he stated that Appellant had been previously adjudicated delinquent, did not even cite his source for the allegations. Likewise, the prosecutor's statement did not indicate the source of allegations, whether the victims had alleged the abuse (or whether a third-party had made the claim), or whether the prosecutor had learned of the prior allegations second-hand or through personal knowledge.

Based on the trial court's inappropriate consideration of "unsubstantiated claims about prior crimes for which Appellant was never arrested, charged, or convicted," which "appear[ed] to be the primary basis for the sentencing court's decisions to depart upward from the recommended sentencing guidelines," we held that the trial court imposed an unreasonable sentence. Id. at *31, 35-36. We therefore vacated Appellant's June 24, 2015 judgment of sentence and remanded for re-sentencing.

At the September 14, 2017 hearing, the trial court stated, "Dr. Pass's report was submitted to me by the defense, and in that report it states that [Appellant] had a juvenile adjudication of fondling an eight-year old cousin." N.T., 9/14/17, at 16. The trial court subsequently explained:

> [Appellant] takes particular issue with this Court's consideration of his juvenile adjudication for fondling his eight-year old cousin, arguing that it was both hearsay and a violation of the prohibition against double jeopardy for this Court to consider it in sentencing. To the contrary, it is well-established that juvenile adjudications may be used in calculating a prior record score, See Commonwealth v. Bonner, 135 A.3d 592, 603 (Pa. Super. 2016), and so this Court appropriately considered it as one of many factors when crafting its sentence.

\* \* \*

---

. . . To permit the prior allegations of sexual misconduct at issue in this case, based on a record of unsubstantiated, undetailed, and likely hearsay statements by Dr. Pass and the prosecutor, would effectively eviscerate the rule that uncharged prior allegations of criminal conduct should only be considered in limited circumstances.

A.S., 1366 WDA 2015 at *17, 18.

- 11 -

. . . Dr. Pass' analysis – submitted by [Appellant] on his own behalf – which concluded on one scale that [Appellant] was a moderate to high risk to re-offend (though on another scale he was low risk), takes on new weight when read in context with [Appellant's] juvenile adjudication for fondling his cousin.

Trial Court Opinion, 1/19/18, at 6, 8 (emphases added).

At the outset, we recognize that "[a] sentence is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration. This is so because the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information[.]" Commonwealth v. Karash, 452 A.2d 528, 528 (Pa. Super. 1982) (citations omitted). Although a trial court may consider a defendant's prior arrest not resulting in a conviction when the court properly recognizes the absence of a conviction, Commonwealth v. Fries, 523 A.2d 1134, 1136 (Pa. Super. 1987), "prior uncharged criminal conduct can be considered for sentencing purposes under certain limited circumstances." Commonwealth v. P.L.S., 894 A.2d 120, 128 (Pa. Super. 2006). However, we specified in P.L.S. that "uncharged criminal conduct may not be used for sentencing purposes when the record is devoid of the necessary evidentiary link between the defendant and the uncharged prior conduct." Id. at 131 (emphasis added).

Here, the "necessary evidentiary link" between Appellant and his alleged prior sexual misconduct is absent from the record. Our review reveals that there has been no new evidence introduced regarding the allegations referenced by Dr. Pass in his report, see N.T., 9/14/17, at 1-24; Updated PSI,

8/24/17, at 1-9, which this Court previously found to be "unsubstantiated," and "not supported in the record, either through Appellant's admission to such conduct, renewed allegations by the victims, or any other independent source of evidence beyond what appears to be hearsay on the part of the prosecutor and Dr. Pass." A.S., 1366 WDA 2015 at *31.

The Commonwealth agrees that no new information has been offered to substantiate the claims made in Dr. Pass's report. Commonwealth's Brief at 28-29 ("At the resentencing hearing, the Commonwealth presented no information that Appellant had a juvenile adjudication, and thus the decision from this Court remained the law of the case. . . . Therefore, Appellant is correct in his argument that the trial court once again considered an impermissible factor in crafting its sentence on remand."). Moreover, the trial court expressly referenced Dr. Pass's report during Appellant's re-sentencing, and when given the opportunity to address the reference in its Rule 1925 opinion, stated simply that Dr. Pass's opinion of Appellant's recidivism risk, "[took] on new weight when read in context with [Appellant's] juvenile adjudication for fondling his cousin." Trial Court Opinion, 1/19/18, at 8.

As the juvenile allegations against Appellant remain unsubstantiated, we conclude that the conduct alleged in Dr. Pass's report remains "uncharged criminal conduct" that "may not be used for sentencing purposes when the record is devoid of the necessary evidentiary link between the defendant and the uncharged prior conduct." P.L.S., 894 A.2d at 131. The record is devoid of a "necessary evidentiary link," such that the trial court again relied upon

impermissible information as the basis of its upward departure from the sentencing guidelines. Accordingly, we are constrained to hold that the trial court abused its discretion in imposing Appellant's September 14, 2017 sentence.

Appellant also asserts that the trial court erred in concluding at sentencing that he has "accomplished very little in his life." Appellant's Brief at 35-36 (citing N.T., 9/14/17, at 16). Again, the Commonwealth "is constrained to agree with Appellant that the trial court's belief that he had 'accomplished very little in his life' is unsubstantiated, and an impermissible factor to consider when fashioning its sentence." Commonwealth's Brief at 30. The Commonwealth states that it "[was] perplexed by the trial court's statement at the resentencing hearing." Id. at 29. Further, the Commonwealth provides a contrasting account of the evidence presented at Appellant's re-sentencing hearing:

> The record seemingly indicates the exact opposite. At the time of the June 2015 sentencing, Appellant was a 20-year-old married college student at Indiana University of Pennsylvania (IUP). In 2013, he graduated from McKeesport High School, and then enrolled in IUP where he was involved in the band, orchestra, and dramatic arts. He and his wife lived alone, worked, and attended college. His wife explained that their rent was $810 a month, and they both had worked at a food store called Martin's. It allowed them to make enough money to pay rent and their monthly bills. When Appellant was arrested, he was laid off by the store. The 2015 PSI outlined Appellant's prior job history. Since August of 2014, Appellant was involved in voluntary sex-offender counseling and treatment with Dr. Pass. Since his sentencing in 2015, Appellant worked in the prison kitchen and has completed twelve therapy or educational programs by the date of his resentencing. He earned his legal assistant/paralegal certificate via

> correspondence classes at Blackstone Career Institute, and had also completed religious studies coursework via correspondence.

Id. at 29-30 (citations to notes of testimony omitted).

In support of its conclusion that Appellant "accomplished very little in his life," the trial court stated that Appellant's "characterization of his employment is somewhat deceptive," as "it was not continuous and only for stretches of five, two and seven months, respectively." Trial Court Opinion, 1/19/18, at 6-7. Appellant responded that "[t]he fact that he worked at three different businesses was not atypical for a college student whose academic and extracurricular schedule changed every semester." Appellant's Brief at 37.

As previously noted, "[a] sentence is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration." Karash, 452 A.2d at 528 (citations omitted). Further, "evidence upon which a sentencing court relies must be accurate, and there must be evidentiary proof of the factor upon which the court relied." Commonwealth v. Downing, 990 A.2d 788, 793 (Pa. Super. 2010) (citations omitted). Thus, we again find that the trial court relied upon an impermissible factor in sentencing Appellant. The evidence cited by the Commonwealth illustrates that prior to his incarceration, Appellant was a full-time college student who worked part-time jobs to pay rent and other living expenses. Also, there was evidence that during incarceration, Appellant made constructive use of his time by participating in activities aimed at supporting his success upon release from prison. Accordingly, the record does

not support the trial court's determination that Appellant has "accomplished very little in his life," and we conclude that the trial court relied on another impermissible sentencing factor.

Appellant next argues that "the record did not support the [t]rial [c]ourt's conclusions about victim impact." Appellant's Brief at 37. Appellant raised a similar issue in his first appeal. A.S., 1366 WDA 2015 at *22 ("Appellant complains that the record does not support and in fact, contradicts the sentencing court's assertion that 'the impact on Appellant's victims must be absolutely horrendous.'"). Once again, the Commonwealth agrees with Appellant, stating that "nothing was presented to counter the defense information (i.e., letters from the victims' and their mother) that the victims were doing well." Commonwealth's Brief at 30. The Commonwealth therefore concludes "that the trial court's refusal to accept this information and instead speculate on how it believed the victims' were doing was an impermissible sentencing factor." Id.

The trial court at re-sentencing stated:

> I will also state that among the other things that I have been presented with there was a memorandum of sentencing that was turned into the court yesterday. A lot of the letters that were included in that memorandum were from several months ago. I have had an opportunity to go over the letters and the memorandums and certificates and [Appellant's] statement, so, just for the record. . .

> * * *

> . . . I know that there are letters from the victims in this case. The parents of the victims and [Appellant] are the same people.

I would, perhaps, give more weight to the letters of the victims if I had an analysis by a third party who was a neutral party, such as a therapist or a counselor or someone that did not have an equal interest in [Appellant] and the victims in this case.

N.T., 9/14/17, at 4, 22.

The Sentencing Code provides that the sentence imposed by a trial court should be consistent with, among other factors, "the gravity of the offense as it relates to the impact on the life of the victim." 42 Pa.C.S.A. § 9721(b). As such, considerations of "victim impact statements have been expressly upheld by this Court." Commonwealth v. Smithton, 631 A.2d 1053, 1057 (Pa. Super. 1993) (citations omitted). However, in fashioning a sentence, a trial court is within its discretion in weighing the testimony or statement of the victim of a crime. See Commonwealth v. Cottam, 616 A.2d 988, 1006 (Pa. Super. 1992) ("The role of the sentencing judge is to weigh all mitigating and aggravating factors and arrive at an appropriate sentence.") (citation omitted).

Upon review, we discern no error by the trial court with regard to victim impact at re-sentencing. In contrast to the June 24, 2015 sentencing, where the trial court asserted that "the impact on [Appellant's victims] must be absolutely horrendous," A.S., 1366 WDA 2015 at *22, at re-sentencing, the trial court only stated: "I [cannot] give too much credence because there is no independent investigation." N.T., 9/14/17, at 22. As the trial court did not make unsubstantiated characterizations of the lasting effects of Appellant's crimes on the victims, we cannot say that it relied upon an impermissible factor. The trial court stated at re-sentencing that it considered the victim

statements submitted by Appellant, and the trial court thus did not abuse its discretion in doing so.[14]

In his final sentencing claim, Appellant avers that the trial court "focused on the improper factors . . . at the expense of proper consideration of the [Section] 9721(b) factors." Appellant's Brief at 41. Appellant claims the trial court consequently "disregarded mitigating evidence and [Appellant's] rehabilitative needs," which resulted in a "sentence [that] was not individualized, was based on bias, and was manifestly excessive." Id. at 48.

The relevant portion of 42 Pa.C.S.A. § 9721(b) states:

> In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b). "The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section

_____

[14] Appellant cites the United States Supreme Court's holding in Eddings v. Oklahoma 102 S.Ct. 869 (1982), in arguing that a sentencing court may determine the weight given to relevant mitigating evidence, but may not find it weightless. However, Eddings is distinguishable from Appellant's case because it applies to the penalty phase of a capital case. See Commonwealth v. Mattison, 82 A.3d 386, 399 (Pa. 2013) (citing Eddings for the proposition that states are prohibited from barring relevant mitigating evidence from being presented and considered during the penalty phase of a capital trial).

9721(b). However, the record as a whole must reflect due consideration by the court of the statutory considerations." Commonwealth v. Feucht, 955 A.2d 377, 383 (Pa. Super. 2008) (citations omitted).

Instantly, the trial court stated:

The Court has read and considered and reviewed two presentence reports that were prepared on behalf of [Appellant], the first was for the original sentence, and the second is for how he has been doing while he has been in jail.

I have reviewed the entire file, as well as all of the records. I find that I was incorrect when at the first sentencing I said that [Appellant] did not disclose until after he was arrested. In fact, he did disclose to a therapist, I believe in Indiana, and was subsequently arrested.

Dr. Pass's report was submitted to me by the defense, and in that report it states that [Appellant] had a juvenile adjudication of fondling an eight-year old cousin.

The maximum sentence in this case could have been [90] years in jail even after the rape charge was withdrawn. I find in mitigation of [Appellant] he is remorseful, he pled guilty, and he is doing well in prison. However, on the aggravated range I find that he underwent only sporadic employment. He was married but apparently is now divorced. And, in fact, accomplished very little in his life.

Dr. Pass recommended counseling but did say that he had a probably moderate or moderate to high risk to re-offend according to one test. At the other test they said it was a low risk to re-offend.

But here we have two children. [Appellant] violated a position of trust and love when he abused both of those children. They were twins. They were of two different sexes, and there was multiple abuse for his sister.

Although [Appellant] has pled guilty to sexual intercourse he goes back and forth on whether or not there was sexual

- 19 -

intercourse with the sister. I find that the children were of tender age when the abuse occurred. . . .

\* \* \*

Just an addendum to what I stated, I know that there are letters from the victims in this case. The parents of the victims and [Appellant] are the same people. I would, perhaps, give more weight to the letters of the victims if I had an analysis by a third party who was a neutral party, such as a therapist or a counselor or someone that did not have an equal interest in [Appellant] and the victims in this case.

I do hope that they are correct and that they are doing well. But, again, I can't give too much credence because there is no independent investigation.

N.T., 9/14/17, at 15-17, 22.

As evidenced in the trial court's statement, it correctly considered the gravity of Appellant's offenses as they related to the impact on the victims and the community, specifically referring to Appellant's violation of a position of trust, noting that the female victim was subjected to multiple episodes of abuse, and that the trial court received and read the victim impact statements. The trial court also referred to the rehabilitative needs of Appellant, specifically citing Dr. Pass's report and his recommendation that Appellant receive counseling services.

As with his prior appeal, Appellant seems to allege that the trial court improperly weighed legitimate sentencing factors. Our standard of review precludes this Court from re-weighing sentencing factors. Commonwealth v. Macias, 968 A.2d 773, 778 (Pa. Super. 2009) ("We cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing

court."). Thus, we cannot conclude that the trial court abused its discretion in failing to comply with Section 9721.

We now turn to whether, in light of the above discussion, Appellant's sentences for indecent assault and sexual assault Appellant were unreasonable and clearly unreasonable, respectively. Upon review of the notes of testimony, in conjunction with our determination that the trial court again considered impermissible factors, we find that the sentences were clearly unreasonable. As noted in our previous disposition, "we must consider whether the sentences were individualized to Appellant with regard to the nature and circumstances of the offense, the sentencing court's observations of Appellant, the findings that formed the basis of the sentence, and the sentencing guidelines." A.S., 1366 WDA 2015 at *27 (citing 42 Pa.C.S.A. § 9781(d)).

While the trial court did err with respect to the impact of the crimes on the victims, and corrected itself at re-sentencing in regard to the timing of Appellant's confession, the trial court again considered the unsubstantiated criminal allegations previously determined by this Court to be impermissible. A.S., 1366 WDA 2015 at *18. We stated:

> [N]o exceptional circumstances justified the court's reliance on these allegations, and even worse, the allegations were not supported in the record, either through Appellant's admission to such conduct, renewed allegations by the victims, or any other independent source of evidence beyond what appears to be hearsay on the part of the prosecutor and Dr. Pass.

Id. at *31.

Not only did the trial court admit to considering the impermissible criminal allegation, it specifically gave the allegation deferential weight in explaining Appellant's sentence. Trial Court Opinion, 1/19/18, at 8 (stating that "Dr. Pass' analysis . . . takes on new weight when read in context with [Appellant's] juvenile adjudication for fondling his cousin."). As no new evidence was introduced at re-sentencing to substantiate the allegations, the trial court's consideration of the unsubstantiated criminal conduct was improper. In addition, the trial court considered an impermissible factor when it concluded that Appellant "accomplished very little in his life." N.T., 9/14/17, at 16. Even the Commonwealth concedes that the record does not support this finding. Commonwealth's Brief at 30. Thus, we are again constrained to conclude that there is a disconnect between the evidence of record and the trial court's re-sentencing. For these reasons, we vacate Appellant's judgment of sentence.

In his second issue, Appellant argues that the trial court improperly denied his motion for recusal. In reviewing the denial of a recusal motion, we apply an abuse of discretion standard while "recognizing that the judge [her]self is best qualified to gauge [her] ability to preside impartially." Commonwealth v. Harris, 979 A.2d 387, 392 (Pa. Super. 2009) (citations omitted).

Appellant asserts that the trial court "abused its discretion in denying the recusal motion when multiple factors established an appearance of bias,

if not actual bias, and this Honorable Court had even encouraged [Appellant] to file a recusal motion." Appellant's Brief at 49 (citing A.S., 1366 WDA 2015 at *36). Appellant states: "[t]he totality of circumstances demonstrates, at the very least, an appearance of bias (1) against [Appellant] in this particular case; and/or (2) against a particular class of offender, i.e., sex offenders." Id. In support of his "particular-case" argument, Appellant avers that the "cumulative effect of the [t]rial [c]ourt's conduct and remarks, established, at the very least, an appearance of bias against [Appellant]." Id. at 53. To support his "class of offender" assertion, Appellant cites our previous decisions in Commonwealth v. Bernal, 138 WDA 2016 (Pa. Super. Dec. 19, 2016) (unpublished memorandum) (Bernal II) and Appellant's prior appeal in A.S.[15] as evidence that "this Honorable Court twice recognized . . . that there was an appearance of bias against sex offenders before this [t]rial [c]ourt." Id. at 64.

A party seeking recusal "bears the burden of producing evidence to establish bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." Commonwealth v. Watkins, 108 A.3d 692, 734 (Pa. 2014) (citations omitted). The United States Supreme

_____

[15] Superior Court Operating Procedure § 65.37(A) provides that "[a]n unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding[.]"; however, Appellant does not cite these decision as precedential authority, but rather as evidence of the trial court's pattern of bias against sex offenders.

Court has recognized that a litigant's due process rights are violated when the circumstances of a judicial decision "g[i]ve rise to an unacceptable risk of actual bias." Williams v. Pennsylvania, 136 S. Ct. 1899, 1908 (2016). However, "simply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant." Commonwealth v. Travaglia, 661 A.2d 352, 367 (Pa. 1995).

When evaluating a claim of personal bias, a reviewing court may consider "temperamental prejudice on the particular class of litigation involved to support [the] allegations." Commonwealth v. Lemanski, 529 A.2d 1085, 1088 (Pa. Super. 1987) (citations omitted). This Court has considered as evidence of bias a trial court's failure to follow our mandates for remand in similar cases. Id. at 1088-89. Similarly, a party's motion for recusal "need not be based only upon [discrete] incidents, but may also assert the cumulative effect of a judge's remarks and conduct even though no single act creates an appearance of bias or impropriety." Commonwealth v. Rhodes, 990 A.2d 732, 748-49 (Pa. Super. 2009) (citation omitted).

With regard to a trial court's "appearance of prejudice" and sentencing in criminal cases, our Supreme Court stated:

> The sentencing decision is of paramount importance in our criminal justice system, and must be adjudicated by a fair and unbiased judge. This means, a jurist who assesses the case in an impartial manner, free of personal bias or interest in the outcome. Because of the tremendous discretion a judge has when sentencing, a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned. A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather,

- 24 -

the appearance of prejudice is sufficient to warrant the grant of new proceedings.

Commonwealth v. Druce, 848 A.2d 104, 108 (Pa. 2004) (citations omitted).

By order dated March 14, 2017, the trial court denied Appellant's motion for recusal. At re-sentencing on September 14, 2017, the trial court commented:

> Okay, as a preliminary matter the [m]otion to [r]ecuse is denied. I will place my reasons on the record at the conclusion of this hearing.
>
> * * *
>
> Okay, first as to the [m]otion for [r]ecusal in [f]ootnote No. 2 the public defender has concluded that of eighteen cases in one year that this Court imposed sentences that were aggravated range, above the aggravated range, the maximum allowable under the law, or included multiple sentences to run consecutively.
>
> It's my impression of the sentencing laws that the Court may impose any of these sentences so long as they are individualized to the case at hand; that is ensuring the safety of the community, of the victims, as well as the needs of the defendant. It also says in this footnote that fourteen cases involved consecutive maximum sentences imposed.
>
> I would ask that the Public Defender's Office produce a list of those fourteen cases so that I can review them. I do not believe that I have imposed sentences where each count was consecutive. Now, maybe one or two counts were consecutive, but certainly not all counts. So, for instance – well, never mind.
>
> * * *
>
> This case has been remanded for resentencing by the Superior Court on the basis that the sentence was above the guidelines. The Superior Court apparently gave credence to defense counsel, that is the Public Defender's assertion that this Court had a blanket policy of sentencing above the guidelines without regard to the facts in the case, an assertion which the

- 25 -

Public Defender's Office concedes was based on reviewing files, talking with co-workers, rather than an in-depth or scientific analysis of the Court's decisions.

Although the Superior Court has conceded that the information cited by defense counsel was limited it invited the [Appellant] to seek this Court's recusal and develop the claim that this Court fails to impose those individual sentences.

This Court has since denied [Appellant's] subsequent [m]otion for [r]ecusal. However, in aid to the Superior Court's consideration of whether this Court imposes individual sentences the Court has conducted a complete statistical analysis of all sentences from 2012 to April of 2017. A total of 8,391 offenses, 1,333 which were sex offenders, as well as the Superior Court's treatment of sex offenses versus non-sex offenses on those that were appealed from 2012 to the present. A total of 226 cases, presumably a more thorough analysis than the defense counsel's review of the cases and the discussion with the co-workers.

The results are as follows: Since 2012 this Court has imposed sentences on 8,391 offenses, excluding the 3,886 offenses where no further penalty was imposed; 4,070, or 90 percent of the offenses, were within or below the guidelines. With particular regard to the sex offender cases, again excluding the 672 offenses where there was no further penalty, 77 percent of this Court's sex offender cases were within or below the guidelines.

These statistics are comparable to the sentencing statistics of other judges. There was some reference to the fact that some of the cases that were below the guidelines were a result of a plea agreement. I would ask the defense counsel to remember that a plea agreement must be accepted and approved by the Court before it can be imposed. So the fact that I felt that the sentence was appropriate, even if it was a plea agreement, to me is neither here nor there.

With regard to the appellate statistics from 2012 to 2016, 226 of this Court's cases were appealed to the Superior Court. In that five-year period 11 cases, or 4.6 [percent], were remanded on the merits. In the last two-year period only 3 cases, or 2 percent, were remanded for the same reason. Of those appellate

cases decided over the past five years 77 were sex offenses and 57 of those cases were affirmed.

This Court condemns strongly the presumptions regarding its sentencing practices based on counsel's limited case list or some anecdotal information shared by the co-workers as well as any reliance upon them.

Statistically this Court's sentencing pattern, both in sex offender cases and all types of offenses, is comparable to other judges in this division. Particularly, this Court's overall sentencing rate of 90 percent of cases having sentences within or below the guidelines demonstrates that this Court does not, in fact, automatically sentence the above guidelines in every case despite defense counsel's assertion. A small number of cases on one attorney's case list is not a representative sample form which the bald assertion can be made, whether or not it includes coffee talk from colleagues. Although it is attempting to pile on to one harshly worded footnote, and this footnote would be in the Bernal – Commonwealth versus Bernal case opinion, or likewise to criticize this Court, counsel would do well to conduct a careful and considered analysis before making such assertions to the appellate court who only have the records before them.

I also find it somewhat unique that defense counsel used as one of its sources the Pittsburgh Post-Gazette instead of the official record.

N.T., 9/14/17, at 2, 14-15, 17-21. The trial court denied Appellant's counsel's request to respond. Id. at 21.

In its opinion, the trial court stated:

[Appellant] also argues that this Court erred in denying his [m]otion to [r]ecuse as he asserts that this Court is biased and prejudiced against him. In support of his claim, he argues that this Court imposed the same sentence despite being instructed to give a lesser sentence by Superior Court, that it read from "a prepared memorandum" when imposing sentence, that it failed to provide the methodology for the sentencing statistics cited at the hearing and that it refused to allow defense counsel to respond at the hearing. This claim is meritless.

\* \* \*

As is required, upon receipt of [Appellant's] [m]otion, this Court reviewed it along with the record in its entirety and determined that it was able to proceed impartially and without undermining public confidence in the judiciary. That decision was well within this Court's discretion and on that basis alone, it should be upheld.

With particular regard to the specific averments of prejudice, in varying order, this Court did make notes when it reviewed the record in its entirety in preparation for sentencing. That this Court read from those notes at the hearing reflects only that I took extensive time to prepare for the hearing and consider the various factors involved in crafting the sentence. (This Court suspects that had it not made notes, we would be seeing in place of this claim an averment that this Court was unprepared for the hearing).

As to the method used for calculating its statistics, this Court believes it has clearly explained the nature of its calculations. This Court also finds it interesting that in the context of the recusal claim, counsel claims error in this Court's not allowing her to respond to the "statements at resentencing, but in the context of the excessiveness claim," the same request to speak was characterized as an attempt to "make comments about [Appellant's] character." Regardless, this Court's statistical comments were proper and not reflective of bias or prejudice.

With regard to [Appellant's] claim that this Court imposed the same sentence despite Superior Court's [o]rders to impose a standard or mitigated range sentence, this court refers to the sentencing analysis, above. Section 9721 of the Sentencing Code vests the trial court with the duty to consider the various sentencing factors and our courts have repeatedly held that that consideration is within the trial court's discretion. Our courts have similarly noted that the trial court is in the best position to weigh the various factors, and so sentencing decisions rest with the trial court, not the appellate courts. It is clear from the record that this Court did not simply re-impose the same sentence, as [Appellant] now avers, but that it re-reviewed and re-considered the record and then engaged in a [thorough] and extensive analysis of all required sentencing factors and mitigating evidence presented by [Appellant]. The sentence that resulted was both

- 28 -

appropriate and within this Court's discretion. This claim is meritless.

Trial Court Opinion, 1/19/18, at 10-12 (citations omitted).

We note that the trial court has refused repeatedly to recuse from cases at remand, citing statistics and asserting that the statistics prove that it sentences sex offenders individually. However, our review demonstrates otherwise. See Commonwealth v. Bernal, -- A.3d --, 2018 WL 6498126, *5 (Pa. Super. 2018) (Bernal III) ("Here, when viewed through the prism of the court's conduct over the pendency of this matter, the repeated imposition of above-guidelines, statutory-maximum, consecutive sentences upon [defendant], a first-time offender with a prior record score of zero, casts ample doubt on [this trial court's] ability to remain impartial and to impose upon [defendant] an individualized sentence tailored to him and the facts of his case."); Commonwealth v. McCauley, -- A.3d --, 2018 WL 6188344, *6 (Pa. Super. 2018) ("[B]ecause the trial court continually refuses to follow mandates from [the] Superior Court that require a sentencing hearing that meets statutory and constitutional requirements, [the] Superior Court has had to remand several cases multiple times."); Bernal II, 138 WDA 2016 at *17 n.9 ("We nonetheless would be remiss if we did not express our concern for a sex offender's ability to receive individualized sentencing before a sentencing judge, who consistently imposes consecutive and/or statutory maximum sentences upon a particular class of offenders.").

When a trial judge repeatedly refuses to follow the mandates of an appellate court, a pattern of bias emerges.[16] In this case, the notes of testimony as well as the trial court opinion support this pattern – specifically the trial court's rejection of the evidence presented by the Assistant District Attorney and the Public Defender; the trial court's "script" that has been recited in other cases where the trial court argued that "statistics" prove the trial court's impartiality; and the trial court's reliance on or consideration of the same factors that this Court held in Appellant's prior appeal to be impermissible. A.S., 1366 WDA 2015. Collectively, the record supports this Court's determination that the trial court is unable or unwilling to properly and impartially sentence Appellant. Therefore, we conclude that the trial court's impartiality can be more than reasonably questioned, and for that reason, the trial court abused its discretion in denying Appellant's motion for recusal. See Harris, 979 A.2d at 392.

Accordingly, we reverse the trial court's denial of Appellant's request for recusal. We also – once again – vacate Appellant's judgment of sentence and

_____

[16] Unfortunately, this emerging pattern has drawn attention from local media. See Appellant's Brief at 58-59. See also Lomas v. Kravitz, 130 A.3d 107, 122 (Pa. Super. 2015) ("If the judge determines he or she can be impartial, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary.") (citation omitted) (emphasis added).

remand for re-sentencing,[17] noting that upon being re-sentenced, Appellant shall be credited for time served.

Judgment of sentence vacated. Order denying recusal reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

P.J.E. Bender joins the memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2018

_____

[17] Upon remand for re-sentencing, we are mindful of the recent resignation of this trial court. Accordingly, we refrain from ordering the reassigning of Appellant's re-sentencing to another trial court because reassignment must now occur out of necessity.