J-S15042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUBEN RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 270 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 23, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005455-2018

BEFORE: NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED NOVEMBER 10, 2022**

Ruben Rodriguez ("Rodriguez") appeals from the judgment of sentence imposed following his convictions for attempted murder, conspiracy to commit aggravated assault, persons not to possess a firearm,[1] and related offenses. We affirm.

The trial court provided the following factual and procedural history:

> [Rodriguez] and co-defendant, Joshua Martinez [("Martinez"),] and several other individuals, were associated with a gang called, "GMO," or "Gang Members Only." Martinez and [Rodriguez] self-promoted their affiliations with GMO on social media and wore items of clothing that displayed the "GMO" logo. GMO is associated with narcotics distribution and firearms offenses in specific areas of Philadelphia, and pictures on their various social media showed that members of GMO are known to carry fanny packs wherein they conceal firearms.
>
> On July 20, 2017, a corner store surveillance system captured a shooting at Lawrence and Indiana St[r]eets in

---

[1] **See** 18 Pa.C.S.A. §§ 901, 903, 6106(a)(1).

Philadelphia where [Rodriguez,] . . . Martinez, and several other known GMO associates can be seen walking around the corner store, apparently waiting for something. Video surveillance showed [Rodriguez] and his associates, wearing fanny packs, walk up Indiana Avenue[,] and when a specific car drives down the block, [Rodriguez] and Martinez pull out guns from their fanny packs and begin firing at the car as it drives down Indiana Avenue. The video shows Martinez kneeing down in the middle of the street and firing numerous shots at the car while [Rodriguez] stood in front of [] Martinez, also firing numerous times. [During the shooting, a sixteen-year-old boy in a moving vehicle was struck in the back.] Firearms examinations show that some of the cartridge casings found at the scene of the shooting were fired from the same gun as recovered for a subsequent shooting committed by [] Martinez on August 17, 2017, and other casings were fired from a gun recovered by police officers following their arrest of [Rodriguez] on September 1[3], 2017[] for a [probation or] parole violation.

[More s]pecifically, on September 13, 2017, Philadelphia Police Officers, including Officer John Seigafuse, were patrolling in an unmarked police vehicle when they observed [Rodriguez] walking down the street with a fanny pack. The officers, who knew [Rodriguez] to be a member of GMO, and therefore likely to be carrying a gun in his fanny pack, also had information that [he] had an open arrest warrant for a violation of probation [or parole]. The officers followed [Rodriguez] into a store, detained [him,] and then placed him into custody[,] for the open warrant. They then found a firearm in his fanny pack during a pat down search for weapons. Subsequent firearms examinations and casings confirmed the gun recovered from [Rodriguez] on September 13, 2017 had fired shots during the July 20, 2017 shooting. . .. Martinez was also subsequently arrested, and the gun recovered on his person also matched shell casings from the July 20, 2017 shooting. Both [Rodriguez] and Martinez were charged in the July 20, 2017 shooting.

* * * *

Prior to trial, [Rodriguez] filed a motion to suppress the firearm recovered from [his] fanny pack[,] arguing that the police officers involved lacked probable cause to arrest and search [him] and his belongings. On December 10, 2018, th[e trial c]ourt held a hearing on [Rodriguez's] motion. At this hearing, the

Commonwealth offered the testimony of . . . Officer [] Seigafuse, who recovered the gun used in the July 20, 2017 shooting.

* * * *

[At the suppression hearing,] Officer Seigafuse testified that he had known [Rodriguez] for the last ten [years] of his thirteen[-]year career as a police officer, and had known [Rodriguez] to be a member of the GMO . . . gang located in the 25th police district where he patrolled. Officer Seigafuse testified that he had known . . . Martinez to also be a member of GMO. He had seen both defendants on social media wearing GMO apparel and fanny packs. Further, Officer Seigafuse testified that he was aware of a shooting that had occurred in the high drug area of Lawrence and Indiana Streets where both defendants and other members of GMO had been seen. Officer Seigafuse had seen video of the July 20, 2017 daytime shooting and he observed and identified both defendants on the video pulling guns from their fanny packs and firing their guns at a passing car.

Subsequent to his review of the surveillance video, Officer Seigafuse was contacted by Detective Martin Sherron of East Detectives and advised that there was an active warrant [for Rodriguez] for either a parole or probation violation. Officer Seigafuse testified that about a month later, on September 13, 2017, he was on patrol in an unmarked but known police vehicle in the area of Howard and Cambria Streets when he observed [Rodriguez] walking towards the direction of his patrol vehicle. [Rodriguez] looked in the direction of the unmarked patrol car and immediately went inside a corner store. Officer Seigafuse observed [Rodriguez] wearing a fanny pack around his shoulder as he entered the store. Officer Seigafuse and his partner exited their vehicle and followed [Rodriguez] into the store. When they entered the store, [Rodriguez] was at the counter and he immediately put his hands into the air and stated, "You got me, I'm not resisting, just take it." Officer Seigafuse's partner then took the fanny pack off [Rodriguez's] shoulder and "touched it" for a few seconds[,] and then "shook his head" at Officer Seigafuse [to indicate] that there was a gun inside the fanny pack. [Rodriguez] was then placed under arrest for violation of parole or probation[,] and his fanny pack was searched both as incident to the arrest and to make certain that [Rodriguez] did not have a weapon on him during transport following the arrest. [During the

- 3 -

search, officers found and seized] a handgun used in the July 20, 2017 shooting . . ..

Further, at the suppression hearing, [the parties] stipulated that[,] if called to testify[,] Detective [] Sherron would testify that he received information from [Rodriguez's] parole agent that [Rodriguez] had an active warrant for a probation or parole violation[,] and that he forwarded that information to Officer Seigafuse prior to [Rodriguez's] September 13, 2017 arrest . . .. [Following the hearing, the trial court denied suppression.]

* * * *

The Commonwealth [then] filed a motion to consolidate [Rodriguez's] charges from the July 20, 2017 shooting with those of Martinez from the July 20, 2017 and August 17, 2017 shootings. Th[e trial c]ourt . . . granted the Commonwealth's [motion,] and [Rodriguez] and . . . Martinez were brought to trial together . . ..

* * * *

Prior to trial, th[e trial c]ourt granted [Rodriguez's] request that Officer Seigafuse [be precluded from] testify[ing] that he recognized [Rodriguez] as someone who frequented a known drug corner[,] [and instead permitted Officer Seigafuse to testify] only that he had known [Rodriguez] from his patrolling the neighborhood. Since [Rodriguez's] identity . . . as [one of] the shooters in the July 20, 2017 [incident] was [at] issue, Officer Seigafuse's ability to recognize and identify [Rodriguez] from the July 20, 2017 video surveillance was critical to the Commonwealth's case. However, th[e trial c]ourt found that raising [Rodriguez's] possible involvement with [prior] drug activity would unfairly prejudice him while he sat trial on firearms[-]related charges[,] [which is why the court] thus precluded [Officer Seigafuse] from testifying as to [Rodriguez's] frequenting [a] known drug corner.

* * * *

On the second day of trial, [Officer] Seigafuse[] testified that he [knew] [Rodriguez, who was] seated in the courtroom[,] since he was a teenager[, from] the corner of 5th and Westmoreland Streets, which [Officer Seigafuse] then testified to was "at the time the busiest drug corner in Kensington." . . . Counsel for

- 4 -

[Rodriguez] objected to this testimony and requested that a mistrial be declared . . .. Th[e trial c]ourt then dismissed the members of the jury and[,] with only counsel and defendants present, asked Officer Seigafuse if he was "told not to say anything about drugs or drug corners when you were testifying about how you knew the defendant?" to which the officer responded[,] "No." [The prosecutor later corroborated the officer's response.]

Th[e c]ourt then permitted counsel to make appropriate argument on the motion for mistrial and held the matter under advisement until the following day when th[e c]ourt, in an effort to be very protective of the defendants' rights to a fair trial, granted the defendants' requests and granted a mistrial, rather than opting to give the jury a curative instruction.

However, prior to trial restarting, [Rodriguez] made an oral motion to th[e c]ourt to dismiss the case on the grounds of double jeopardy contending that there was prosecutorial misconduct which resulted in Officer Seigafuse's testimony regarding his knowledge of [Rodriguez] from a known drug corner. Th[e trial c]ourt, in denying [Rodriguez's] motions to dismiss, made specific findings on the record that there was "no prosecutorial misconduct in any way either on behalf of the prosecutor or the police office."

* * * *

[At the conclusion of Rodriguez's] and . . . Martinez's new trial[,] [the] jury . . . convict[ed] [Rodriguez] of the crimes as previously set forth herein.

* * * *

[The trial court later sentenced Rodriguez] to [consecutive standard-range sentences of eleven to twenty-two years for attempted murder; six to twelve years for conspiracy to commit aggravated assault; and five to ten years for persons not to possess a firearm, for an aggregate] term of [twenty-two] to [forty-four] years' incarceration . . ..

Trial Court Opinion, 7/12/21, at 2-4, 8-10, 12-13 (footnotes, citations to the record, and unnecessary capitalization omitted; paragraphs re-ordered for

clarity).  Rodriguez filed a timely post-sentence motion on August 30, 2019, which was denied by operation of law on December 30, 2019.[2]  Rodriguez filed a timely appeal and both he and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Rodriguez raises the following issues for our review:

1. Did the trial court erred [sic] in denying [Rodriguez's] motion to dismiss/bar a re-trial [sic], based upon double jeopardy, as a result of intentional prosecutorial misconduct?

2. Did the trial court commit[] reversible error by granting the Commonwealth's motion to consolidate the shooting case against . . . Martinez with this case against [Rodriguez]?

3. Did the trial court abuse[] [its] discretion by sentencing [Rodriguez] to an unduly harsh and excessive sentence?

Rodriguez's Brief at 8 (unnecessary capitalization omitted).

Rodriguez first argues that the trial court erred in denying his motion to dismiss the prosecution and bar retrial under the double jeopardy clause of the Pennsylvania Constitution.  Our standard and scope of review are well-settled:

> An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary.  As with all questions of law, the appellate standard of review is *de novo*[.] To the extent that the factual findings of the trial court impact its

_____

[2] Rodriguez's motion was denied by operation of law after 120 days, which fell on Saturday, December 28, 2019.  ***See*** Pa.R.Crim.P. 720(B)(a); 1 Pa.C.S.A. § 1908.  We note that the order denying Rodriguez's motion by operation of law is dated January 7, 2020 on the official docket.  Rodriguez's notice of appeal, dated January 10, 2020, is timely, regardless.  ***See*** Pa.R.A.P. 903(a).

double jeopardy ruling, we apply a more deferential standard of review to those findings.

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) (internal citations and brackets omitted). While our review is not "blindly deferential" to the trial court's credibility determinations, we nevertheless recognize that "[a] fact-finder who hears witness testimony first-hand is able to take into account not only the words that are spoken and transcribed, but the witnesses' demeanor, tone of voice, mannerisms, and the like." *Commonwealth v. Johnson*, 231 A.3d 807, 818 (Pa. 2020) (internal citations omitted).

This Court has recently set forth the current state of the law on this issue as follows:

It has long been the case under both state and federal law that a subsequent trial is prohibited when a mistrial resulted from prosecutorial overreaching in the form of intentional misconduct designed to provoke a mistrial. In *Commonwealth v. Smith*, [] 615 A.2d 321 ([Pa.] 1980), our Supreme Court ruled that Pennsylvania's constitution provides more extensive double jeopardy protections than its federal counterpart, holding that a retrial is impermissible "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Id*. at 325. Nonetheless, "*Smith* did not create a *per se* bar to retrial in all cases of intentional prosecutorial overreaching. Rather, the *Smith* court primarily was concerned

- 7 -

with prosecution tactics, which actually were designed to demean or subvert the truth seeking process." ***Commonwealth v. Lambert***, 765 A.2d 306, 327 (Pa.[] Super. 2000) (cleaned up).

Our High Court in ***Johnson*** again augmented the prevailing law, ruling that the Pennsylvania constitution's double jeopardy protections also prohibit retrial if the prosecution acted recklessly. Specifically, the ***Johnson*** Court held:

Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to the behavior described in ***Smith***, relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial.

***Johnson***, ***supra*** at 826 (citation and emphasis omitted). However, the Court made it clear that it is still true that not every instance of error by the Commonwealth requires a finding that retrial is barred:

In reaching our present holding, we do not suggest that all situations involving serious prosecutorial error implicate double jeopardy under the state Charter. To the contrary, we bear in mind the countervailing societal interests . . . regarding the need for effective law enforcement, and highlight again that, in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial **overreaching** – which, in turn, implies some sort of conscious act or omission.

***Id***. at 826 (citation omitted, emphasis in original).

The Court explained that prosecutorial overreaching is conduct that reflects a fundamental breakdown in the judicial process where **"the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." *Id*.** While the "overreaching prerequisite" was abandoned in federal jurisprudence, it remains "firmly entrenched" in Pennsylvania's double jeopardy law.

- 8 -

*Commonwealth v. Krista*, 271 A.3d 465, 469–70 (Pa. Super. 2022), *appeal denied*, 101 WAL 2022 (Pa. Sept. 27, 2022) (some citations omitted, emphasis in original).

Rodriguez maintains the trial court issued a pretrial order precluding Officer Seigafuse from testifying that he knew Rodriguez from prior experience patrolling "one of the busiest drug corners in Kensington." Rodriguez's Brief at 15. Rodriguez asserts that the Commonwealth was obliged to advise Officer Seigafuse not to testify to drug activity in Kensington, therefore, the Commonwealth "flagrantly, or at the very least recklessly, prejudiced [him] to the point of depriving him of a fair trial." *Id*. at 19. Rodriguez argues that the trial court, despite granting his motion for a new trial, erred in denying his motion to bar prosecution under the double jeopardy clause.

The trial court considered Rodriguez's argument and rejected it. As the court explained:

> In the instant matter, in stark contrast to ***Johnson***, ***supra***, this [c]ourt found that, at best, the prosecutor made a mistake in not preparing her witness, namely, Officer Seigafuse, to testify that he knew and recognized [Rodriguez] from the area he patrols rather than from a known drug corner. Further, this [c]ourt found that even had the prosecutor [not] advised the officer as to this [c]ourt's preclusion [o]rder[,] and the officer then testified as to his knowledge of [Rodriguez] from a known drug corner, that it was done mistakenly and not purposely. In so doing, this [c]ourt made the following specific finding: "I believe it was completely inadvertent. The officer was testifying based upon his actual knowledge of where he saw the defendants in terms of being able to understand how he could identify them."
>
> As this [c]ourt stated on the record both immediately after the officer's improper testimony and following a post-trial hearing

on [Rodriguez's] motion to bar retrial, this mistake could have been prevented, but that does not make it reckless or intentional or an attempt to deny [him] a fair trial. There was no overreaching. There was no recklessness. There was no attempt to disadvantage [Rodriguez] or compel him to seek a mistrial. Unlike in **Johnson**, there was no need for overreaching and no attempt to do so.

[]The Commonwealth's errors in this case were negligent rather than reckless or intentional. Thus, . . . the proper remedy for the Commonwealth's negligence was not to bar retrial but to order a new trial. The trial court properly denied [Rodriguez's] claim of double jeopardy.

For all the above reasons, this [c]ourt properly denied [Rodriguez's] request to bar prosecution on the grounds of double jeopardy.

Trial Court Opinion, 7/12/21, at 19-20 (indentation and some citations and quotations omitted).

Initially, we discern no basis for disturbing the trial court's finding that the Commonwealth did not intentionally or recklessly deny Rodriguez a fair trial but was instead negligent in its witness preparation. Following Rodriguez's motion for a mistrial, the Commonwealth explained that it had not understood the trial court's ruling to preclude generalized reference to Officer Seigafuse's familiarity with the neighborhood based on drug activity occurring there:

[]I would just like to clarify, in my conversations with counsel about what it is that Officer Seigafuse was going to testify and his sort of scope of knowledge, there was never either an agreement or a request about not saying what Officer Seigafuse did in his current position for which he has held for the last nine [years] in the [Narcotics Enforcement Team ("NETS")] Unit, but also they never asked me that he couldn't say anything about drugs or what it is that he does in terms of his surveillances

- 10 -

because that is what he does and how it is that he is able to be in all of these places and he doesn't just patrol, he observes people and interactions because he's also having to testify about the connections between these individuals.

So if there was ever a request to not mention drugs or drug dealing or anything with regard to NETS[,] I would have instructed him to that[,] but he was never instructed to not mention any of those things because we never had a conversation that was specific to him not testifying to what he does for the police department.

N.T., 3/28/19, at 140-41. We also observe the Commonwealth additionally represented that Officer Seigafuse's further testimony would cure any adverse inferences the jury might make because he would testify:

[H]e is not somebody who has seen [the defendants] deal drugs, he's not arrested them for dealing drugs. He's out there all the time conducting surveillances for drug dealing and he has never seen them deal drugs. If that is not actually showing how much that they don't deal drugs, I don't know what is, because he's surely arrested tons and tons and tons of people for selling drugs and has arrested [those people].

*Id*. at 139-40.

Our review, based on this record, discloses no reason to disturb the trial court's credibility determination about the Commonwealth's lack of intention to disadvantage Rodriguez or compel him to seek a retrial. *See Krista*, 271 A.3d at 473 (noting that a "prompt concession [of] err[or] and desire to mitigate the damage, if anything, militates against deeming the misconduct sufficient to bar retrial"); *see also Johnson*, 231 A.3d at 818 (observing that the fact-finder is best situated to make credibility determinations). As the Commonwealth's misconduct is not an "act of deliberate or reckless

overreaching," but rather an isolated incident, the law does not require that retrial be barred. *See Krista*, 271 A.3d at 474 (stating that, under *Johnson*, "retrial should be barred when the prosecutor's misconduct is an act of deliberate or reckless overreaching and not an isolated incident"); *see also Sanchez*, 262 A.3d at 1294 (providing that the remedy for negligent prosecutorial misconduct is retrial, not dismissal on double jeopardy grounds). Accordingly, Rodriguez is due no relief.

In his second issue, Rodriguez argues the trial court erred in granting the Commonwealth's motion to consolidate his case with those of his co-defendant Martinez. Whether to grant a motion to consolidate separate indictments is within the "sole discretion of the trial court[,] and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Ferguson*, 107 A.3d 206, 210 (Pa. Super. 2015) (internal citations and quotations omitted). The appellant bears the burden of establishing prejudice. *See id*. "The [appellant] must show real potential for prejudice and not mere speculation. The mere fact that a co-defendant might have a better chance of acquittal if tried separately" is insufficient. *Commonwealth v. Patterson*, 546 A.2d 596, 599–600 (Pa. 1988) (internal citations omitted).

Pennsylvania Rule of Criminal Procedure 582(A)(2) provides: "Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction

or in the same series of acts or transactions constituting an offense or offenses." Our Supreme Court has previously held that "[j]oint trials are advisable when the defendants face conspiracy charges and where the multiple charges demonstrate a logical connection between the defendants and the various crimes charged." *Commonwealth v. Paolello*, 665 A.2d 439, 451 (Pa. 1995) (internal citations omitted); *accord Commonwealth v. Payne*, 760 A.2d 400, 404 (Pa. Super. 2000) (stating that "[w]here defendants are charged with conspiracy, there is a strong preference for joint rather than separate trials"). As our Supreme Court has further explained,

> [t]he general policy of the law is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time-consuming duplication of evidence. Joint trials are, in fact, advisable where, as here, conspiracy is charged. But the interest in judicial economy must be balanced against the need to minimize the prejudice that may be caused to a defendant by consolidation. In determining whether the trial judge abused his discretion, the critical factor is whether the accused has been prejudiced by the trial court's decision.

*Patterson*, 546 A.2d at 600 (internal citations omitted). Lastly, juries are presumed to follow the trial court's instructions. *See Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010).

Rodriguez argues the trial court erred in consolidating his case with the case against Martinez stemming from the latter's involvement in the August

2017 shooting.[3] According to Rodriguez, the "joint trial was unduly prejudicial to [him] as the jury was exposed to a separate violent crime involving the co-defendant[,] rendering it incapable for the jury to separate the cases[,] and therefore[] deprived him of a fair trial." Rodriguez's Brief at 20. Rodriguez argues that there is no basis on which evidence of Martinez's other shooting would be admissible in a separate trial for Rodriguez. *See id*. at 23-24. He maintains that the evidence against Martinez for the August 2017 shooting "compelled a determination of [Rodriguez's] guilt in view of evidence that [Martinez] had committed another shooting unrelated to [Rodriguez]." *Id*. at 23-24.

The trial court considered Rodriguez's arguments and concluded they merited no relief:

> The cases before th[e c]ourt . . . were consolidated because they shared common issues of law and fact. Joinder was granted to conserve judicial resources and prevent duplicative evidence from being presented at separate trials. In deciding whether to consolidate the case of [Rodriguez] with those of Martinez, th[e c]ourt conducted a thorough review of the evidence and assessed the proximity between [Rodriguez's] crimes and those of Martinez, including the circumstances surrounding the crimes, and whether evidence of the other crime was needed to rebut the defendant's assertion of accident, mistake, lack of intent, or self-defense.

> The evidence surrounding both shootings, the first involving both [Rodriguez] and . . . Martinez[,] and the second involving Martinez and other members of the GMO, were relevant and admissible, as they showed identity of the shooters . . .. This

---

[3] We observe that Rodriguez does not allege the trial court erred in consolidating his case with Martinez's case concerning the July 2017 shooting. *See* Rodriguez's Brief at 20.

evidence, combined with the facts of the case, the police investigations, and the witnesses, were intertwined between the two defendants, as both shootings were related to GMO gang related retaliatory shootings. The surveillance video shown to the jury indicated that both [Rodriguez] and Martinez were involved in the July 20, 2017[] shooting. The shell casings found at that scene were later found to come from both the gun found on [Rodriguez] following his September 1[3], 201[7] arrest and the gun found on Martinez following his arrest.

\* \* \* \*

Moreover, it was in the clear interest of judicial economy as set forth in Rule 582 to grant Joinder. [Rodriguez] in this case claims he was unfairly prejudiced by the evidence presented to the jury against his co-defendant, [] Martinez. However, [Rodriguez] was not unfairly prejudiced because these incidents were capable of separation by the jury. Further, the probative value of the joined evidence significantly outweighed any prejudice against [him].

Trial Court Opinion, 7/12/21, at 6-7 (internal citations and quotations omitted).

Following our review, we discern no basis for disturbing the trial court's discretionary ruling. As the court noted, Rodriguez and Martinez were charged with conspiracy arising from their participation in the July 2017 shooting. **See Paolello**, 665 A.2d at 451 (stating that joint trials are preferred where co-defendants are charged with conspiracy); **see also Payne**, 760 A.2d at 404 (noting the "strong preference" for joint trials when co-defendants are charged with conspiracy). The evidence against Martinez presented in the case concerning the August 2017 shooting was relevant and admissible to prove his identity in the July 2017 shooting, given, for example, that some cartridges from the July shooting match those recovered from the August shooting.

Furthermore, the trial court properly instructed the jury that the evidence against Martinez for the August 2017 shooting was only admitted against Martinez and that it was not to be used against Rodriguez, though the jury could consider evidence across the cases to the extent that it was relevant to proving each defendant's identity:

> You must keep in mind that although these cases are being tried together, you, the jury, must make separate and independent evaluations of the evidence against each defendant.
>
> * * * *
>
> You may not find either defendant guilty simply because he is being tried for more than one crime. You may not consider any evidence presented against either defendant as tending to show the defendant is a person of bad character. You may not consider the consolidation or joinder of these cases for any purpose in your deliberations.
>
> Instead, you must separate the evidence presented during the trial regarding each crime as it relates to each defendant during your deliberations.
>
> However, you may consider the evidence against each defendant in each incident for one specific purpose. You may, if you choose, consider the evidence presented at trial to determine whether such evidence tends to prove the identity of either one of the defendants during any of the incidents for which they have been charged.

N.T., 4/9/19, at 33-35.

As explained above, the jury is presumed to follow the court's instructions. *Mollett*, 5 A.3d at 313. Moreover, and most importantly, Rodriguez has failed to show that he suffered any prejudice resulting from the consolidation. Rodriguez argues that the evidence of Martinez's involvement

in the August 2017 shooting "compelled a determination" of Rodriguez's guilt in the July 2017 shooting. However, the record shows the jury carefully weighed the evidence and applied the law: The jury began deliberations on April 9, 2019 and did not reach a verdict until April 11, 2019. During this time, the jury asked several questions, including, *inter alia*: clarification about the definition of "transfer of intent," and to which charges it applies; further explanation about conspiracy liability; and a request to view the video footage from the July 2017 shooting "more than one time." **See** N.T., 4/10/19, at 3-4, 9, 25. Because the record does not support Rodriguez's boilerplate assertion of prejudice, his claim that the trial court abused its discretion warrants no relief. **See Patterson**, 546 A.2d at 600 (stating, "In determining whether the trial judge abused his discretion, the critical factor is whether the accused has been prejudiced by the trial court's decision").[4]

Rodriguez argues in his third issue that the trial court abused its discretion by imposing an "unduly harsh and manifestly excessive sentence." Rodriguez's Brief at 27. A challenge to the discretionary aspects of a sentence does not entitle an appellant to review as of right. **See Commonwealth v.**

_____

[4] **Contra** Rodriguez's Brief at 25 (citing **Commonwealth. v. Brookins**, 10 A.3d 1251, 1254 (Pa. Super. 2010) (concluding the trial court erred in denying Brookins's severance motion where her possession with intent to deliver, and related charges, stemmed from a drug trafficking ring in which she and her co-defendants participated, notwithstanding that her conduct bore "no relationship to the planning and execution of [an] attempted kidnapping and robbery" committed by her co-defendants with whom she was jointly tried)).

*Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Rather, such a challenge must be considered a petition for permission to appeal. *See Commonwealth v. Christman*, 225 A.3d 1104, 1107 (Pa. Super. 2019). Before reaching the merits of a discretionary sentencing issue,

> [w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (internal citation and brackets omitted).

Here, Rodriguez timely appealed his judgment of sentence and included a Rule 2119(f) statement in his brief. Rodriguez also filed a timely post-sentence motion alleging his sentence was unreasonable. *See* Post-Sentence Motion, 8/30/19, at ¶ 3. Having determined that Rodriguez preserved his issue for our review, we must next review his Rule 2119(f) statement to determine whether he has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

In his Rule 2119(f) statement, Rodriguez argues the trial court abused its discretion in imposing an unduly harsh and excessive sentence because his twenty-two to forty-four-year sentence—resulting from the imposition of consecutive sentences—incarcerates him "for a significant period of his adult life," given he "had no prior criminal record for violence, was of a young age of 24[,] and has strong family and community support." Rodriguez's Brief at

27-28. An assertion that a sentence was excessive and that the trial court failed to consider mitigating factors may present a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015); *see also Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question") (internal citation omitted). We therefore grant Rodriguez permission to appeal the discretionary aspects of his sentence and proceed to review the issue on its merits.

In reviewing Rodriguez's discretionary sentencing claim, we are mindful of the following principles:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009) (internal citation omitted). Further, "where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence [investigation] report [("PSI")], we will not consider the sentence excessive." *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011); *see also Moury*, 992 A.2d at 171 (stating that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate

- 19 -

under the Sentencing Code"). Under such circumstances, "we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Corley*, 31 A.3d at 298 (internal citation omitted).

Here, Rodriguez argues that the trial court erred in imposing an unreasonable aggregate sentence by ordering the sentences for three of his convictions to run consecutively. Rodriguez's Brief at 29, 32. He maintains that this was the "first time he was convicted of a crime of substantial violence," and that the court "clearly ignored that [Rodriguez] was otherwise a peaceful citizen, a young man, and from a family offering great support." *Id*. at 32.

The trial court considered Rodriguez's issue and determined that it lacked merit. The court explained:

> [T]his [c]ourt was concerned by [Rodriguez's] past behavior, as well as his distinct and deliberate refusal to accept responsibility for his actions. As this [c]ourt explained during [Rodriguez's] sentencing hearing, th[e c]ourt had great concern with [Rodriguez's] failure to be rehabilitated or to conduct himself properly both while being placed at numerous juvenile facilities as a youth and more recently while awaiting trial on these charges. Further, contrary to [Rodriguez's] assertion, one of his juvenile adjudications was for violence, namely, committing aggravated assault against a police officer. [*See*] N.T.[,] 8/23/2019, [at] 25-26.
>
> During his juvenile placement years, [Rodriguez] was picked up on a bench warrant and was AWOL from one of these programs. Further, now as an adult offender, [Rodriguez] continues to conduct himself inappropriately while in custody. In the months before his trial, [Rodriguez] received numerous disciplinary infractions, including disturbing other inmates and

several . . . for fighting and threatening a prison employee with harm.

[Rodriguez's] contention that th[e c]ourt did not give enough weight to the mitigating circumstances surrounding his sentencing is misguided. Th[e c]ourt carefully considered the testimony provided by [Rodriguez's] sister at his sentencing and understands that [Rodriguez] is a young man of twenty-four (24) and father to a toddler. However, these circumstances are unpersuasive when evaluating the nature of the crime committed by [Rodriguez], namely opening fire on a car in broad daylight during a summer day in a residential Philadelphia neighborhood. [Rodriguez] was captured on high-definition video firing bullets at a moving car and striking a 16-year-old boy in the neck. Fortunately for everyone involved, [neither] the boy nor the other occupants or people on the street were killed.

Moreover, despite the video and the identification evidence establishing his guilt, [Rodriguez] refused to be remorseful or admit his role in the shooting. During his sentencing hearing, [Rodriguez, during allocution,] continued to refuse to accept full responsibility for conduct, stating that the reason he refused the Commonwealth's [plea] offer was because[,] "That's the guidelines. That's not a deal." [N.T., 8/23/19, at 22.]

[]As this [c]ourt stated at [Rodriguez's] sentencing hearing, "I try to give people chances. I try to hope that people can change, but frankly, I'm very skeptical, Mr. Rodriguez, that you're going to change." *Id*. [at] 27. The sentence imposed by th[e c]ourt reflects the totality of the circumstances, including societ[y's] need for protection, the rehabilitative needs of [Rodriguez], the nature of the crime, [Rodriguez's] character, as well as [his] display of remorse, defiance, or indifference to his actions.

Trial Court Opinion, 7/12/21, at 24-26 (some brackets and citations to the record omitted).

Following our review, we discern no abuse of discretion by the trial court at sentencing. We observe that the trial court imposed the following consecutive standard-range sentences: eleven to twenty-two years for

attempted murder; six to twelve years for conspiracy to commit aggravated assault; and five to ten years for persons not to possess a firearm. ***See, e.g.***, N.T., 8/23/19, at 8-9, 28-29. The aggregate sentence is thus twenty-two to forty-four years of imprisonment. In fashioning this sentence, the trial court noted it considered Rodriguez's PSI, mental health report, and the sentencing guidelines, in addition to Rodriguez's witnesses and his allocution. ***See id***. at 25. The court is thus presumed to have considered Rodriguez's mitigating information. ***See Corley***, 31 A.3d at 298. Moreover, a standard-range sentence, in addition to a PSI, militates against Rodriguez's sentence being excessive. ***See id***; ***see also Commonwealth v. Hill,*** 210 A.3d 1104, 1117 (Pa. Super. 2019) (stating that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code") (internal citation omitted). We further note that the trial court considered Rodriguez's mitigating evidence, but concluded, based on his prior criminal history as a juvenile, as well as his conduct while incarcerated pending trial, that a consecutive sentence best served Rodriguez's rehabilitative needs as well as society's protection. ***See Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009) (stating, "The . . . court merely chose not to give the mitigating factors as much weight as Appellant would have liked and decided that the facts did not warrant . . . a sentence lower than the standard range. We cannot re-weigh the sentencing

factors and impose our judgment [instead]").[5] We conclude the trial court did not abuse its discretion in ordering Rodriguez to serve his sentences consecutively.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: 11/10/2022

---

[5] Rodriguez cites to **Commonwealth v. Simpson**, 510 A.2d 760 (Pa. Super. 1986), wherein this Court found an aggregate sentence of thirty to sixty years of incarceration—based on six robbery convictions, for each of which Simpson received a consecutive sentence of five to ten years—excessive. **See** Rodriguez's Brief at 32-33. We find **Simpson** inapplicable. We first note that in **Simpson**, the appellant brandished a gun during the robberies, but he did not fire it, unlike Rodriguez, who fired his gun and hit someone. **See** 510 A.2d at 763. Further, in **Simpson**, and unlike in the case *sub judice*, the appellant had what this Court described as a "virtually nonviolent, unremarkable background," with no prior contact with the law apart from an aggravated assault charge stemming from his being "jumped" by two people. **See id**. at 762-63. Before the robberies for which Simpson was convicted, he had a "relatively benign background and productive lifestyle." **See id**. at 763. We also observed in **Simpson** that "[i]t is clear that the court focused on the nature of the crimes rather than the totality of the requirements mandated by . . . the Sentencing Code . . . ." **Id**. at 762. Here, however, unlike in **Simpson**, and as this Court has noted in other cases post-**Simpson**, "In **Simpson**, th[e] past indicated that the defendant was amenable to rehabilitation. [Here, o]n the other hand, Appellant's past demonstrates that he is not amenable to rehabilitation." **Commonwealth v. Bonner**, 135 A.3d 592, 604 (Pa. Super. 2016).